## *393] *Lessee of John Stouffer *against* Robert Coleman, esq.

An instrument for the sale of lands shall be construed as a mere agreement, though it has very strong expressions of a deed, as "do grant, bargain "and sell," in the present tense, if such appears to be the intention of the parties.

Where a vendor of lands has taken bonds for the purchase money, if there is no receipt indorsed for the purchase money, or proof that they were accepted as actual payment, and he keeps possession of the title papers, the lien continues on the lands, as between vendor and vendee, and those claiming under the latter with notice.

EJECTMENT of 200 acres of land in Martick township.

It was admitted, that the lessor of the plaintiff was seized of the premises in question, and on the 7th February 1783, entered into articles of agreement with Matthias Slough, whereby "Stouffer granted, bargained and sold, and doth "grant, bargain and sell, 100 acres of patented land, and 100 "acres of warranted land, to said Slough, his heirs and as- "signs, to hold the same to him, his heirs and assigns, to "and for their use for ever, in consideration of 675l. to be "paid as follows: 400l. to be paid on the 1st May 1783, 137l. "10s. on the 1st May 1784, and 137l. 10s. on the 1st May "1785, for which three bonds are given, bearing equal date "with the articles. Stouffer covenants and grants that he "will on or before the 1st May 1785, execute, acknowledge "and deliver a good and sufficient deed for the patent land, "and a good and lawful bill of sale for the warranted land, "but Slough to pay Stouffer's wife 3l. for signing the deeds. "Stouffer to be allowed to take away 6 trees and 30 cords of "wood sold to George Ratson. Peter Stouffer, the son of "John Stouffer, to be allowed to live in the dwelling house "till he can suit himself with another, but Slough to have "possession of the other lands. And for the true perform- "ance of the said agreement, the parties bound themselves to "each other in the penal sum of 1350l." This instrument was recorded on the 14th October 1790.

In pursuance thereof, Slough entered on the premises, cleared between 15 and 18 acres of meadow, run a watercourse along the whole, and carried the water by pipes into his barn and kitchen, erected a large stone barn thereon, and cut down a considerable quantity of timber, which he converted into coals for Martick forge, which adjoined thereto, and then belonged to him.

The three bonds were put in suit to August term 1786, and afterwards removed by *habeas corpus* into the Supreme Court, whereon judgments were entered on the 12th April 1787, with a stay of execution for two months.

Three days after the *cesset* had expired, a commission of bankruptcy issued against Slough, and he afterwards obtained

[Stouffer's Lessee *v.* Coleman.]

his certificate.   No part whatever of the consideration money had been paid to Stouffer, who kept the title deeds in his possession, but the sum of 6l. 14s. 3d. was charged against him by *Slough, for a stove and some sheet iron. [*394 Stouffer had given Slough no further assurance of the land.   But previous to the commencement of the ejectment, Stouffer and his wife executed a conveyance to the assignees of Slough, and tendered it to them, to take effect on payment of the consideration money and interest.   Mr. Coleman held the possession in behalf of himself and the other assignees.

For the plaintiff it was argued, that the evident intention of the parties was, that the instrument on which the defendant relies, should operate as a mere agreement.   It was called articles, it was executory, it did not bar the wife of Stouffer of her dower, no receipt was subscribed thereon for the consideration money, the good and sufficient deed was not to be made by Stouffer and his wife until the 1st May 1785, when the residue of the consideration money was to be paid, it contained a penalty for non-performance, and Stouffer kept the title deeds in his own possession.   No person could be deceived by the instrument.   On inspection of the paper, a person would necessarily be led to inquire whether the bonds had been paid.

The intention of the parties must govern, according to the subject matter.   Lilly's Conv. 58.   The whole contents of a deed must be considered, and every part judged of, to discover the intent.   Hob. 275.   8 Co. 83.   Though the most formal words of grant are used, yet if on the whole deed there appears no such intent, but that they are only preparatory and relative to a future lease, the law will do violence to the words, rather than break through the intention of the parties. 3 Bac. Ab. 419, K.   A paper containing words of present contract, with an agreement that the lessee should take possession immediately, and that a lease should be executed in future, operates only as an agreement for a lease, and not as a lease itself.   1 Term Rep. 735.   The two last authorities are recognized in 2 Term Rep. 741, 742.   [See 5 T. R. 167.   6 East 530.   8 East 165.   14 Ves. jr. 156.]

The cases of the lessee of Haines *v.* Starret at *Nisi Prius*, in Northumberland county, November assizes 1788, Mitchell's lessee *v.* Le Roche on a case stated and argued in bank, April term 1791, and Campbell's lessee *v.* Sproat and Snodgrass, tried at *Nisi Prius* at Lancaster, May assizes 1793, and a motion for a new trial thereon January term last, are all extremely apposite to the question now before the court.

The act of assembly of 1 Geo. 1, "for the acknowledging "and recording of deeds," declares, that the words "grant, "bargain and sell," shall amount to an express covenant that the grantor *was seized of an indefeasible estate in fee [*395 simple, freed from incumbrances, and also for quiet

[Stouffer's Lessee v. Coleman.]

enjoyment.   But the law only intended thereby to guard against the mistakes of inexperienced scriveners.

A sells land to B, who afterwards becomes a bankrupt, part of the purchase money not being paid; Lord Chancellor said, there is a natural equity that the land should stand charged with so much of the purchase money as remained unpaid, and that without any special agreement for that purpose.   A shall not be bound to come in as a creditor.   1 Vern. 267, 268.   S. C. 1 Equ. Ca. Ab. 56.   S. P. 1 Pow. on Contracts, 257.

As between the vendor and vendee, the lien continues on the land for the remainder of the purchase money.   The vendee is but a trustee as to the money for the vendor.   3 Atky. 273.   If a conveyance be made of land, and the money not paid, as against vendee, his heir or any claiming under him as purchaser with notice of this equity, the land may be resorted to.   2 Vez. 622.

In 1 Brown's Cha. Rep. 42, Lord Loughborough is made to say—"I have a decided remembrance of a case, where it was held, the lien continued although a bond was given on the sale of lands;"—and in Fowel v. Heelis (particularly stated in the note there) the ground of decision is stated by Mr. Mansfield (Ib. 422) "not only that the party had taken bonds, but had given up the deeds."

We may say with Ld. Ch. Just. Kenyon in Goodeson, v. Nunn, 4 Term Rep. 764, "The covenants in these articles "are dependant; when the one party conveyed his estate he "was to receive the purchase money, and when the other "parted with his money, he was to have the estate."

In the language of Lord Mansfield, as quoted by Buller Justice, "the construction contended for against the plaintiff "is that in spite of his teeth, he shall be obliged to give per-"sonal credit to Slough; whereas the essence of the agree-"ment was, that neither should trust the other personally." Ib. 765.   Here a deed has been tendered by the plaintiff to the assignees, if they will comply with the contract of the bankrupt.   Creditors at large trust to a personal credit; but one having a lien trusts to the thing itself.   The assignees of a bankrupt remain precisely in the same situation as the bankrupt himself.   2 Term Rep. 490 to 495.

The taking of the bonds cannot alter the nature of this case.   If they had been accepted as payment, a receipt would have been indorsed on the articles.   Neither will the judgments obtained on them alter the nature of the plaintiff's *396] title.   If no obligations *had been given, and the agreement had been cautiously drawn up, without any present words of transfer, it will not be said, that a suit brought and judgment thereon would deprive the plaintiff of his lien.   Judgments on obligations taken, will not vary the event.   No laches can be imputed to the plaintiff.   The ac-

[Stouffer's Lessee *v.* Coleman.]

tions which he brought were removed by the defendant for delay, and the stay of execution had expired only three days before the commission of bankrupt issued, which must have been founded on some previous act of bankruptcy.

The supposed improvements of Slough are not equivalent to the injury and waste done to the lands by cutting down all the valuable timber for his iron works, and deducting the profits he has received. Upon an estimate fairly made with these deductions, if there is a balance due to the assignees of Slough, the plaintiff is willing to pay it.

The defendant's counsel observed, that they came prepared to discuss a law point, not to enter into contracts for estimating waste, rents and improvements.

The instrument in question may be called articles, but it is in effect a deed duly recorded. It is intended, and contains present substantial words of transfer, "do grant, bargain and sell," which are certainly more operative under the act of 1 Geo. 1, than is admitted by the plaintiff's counsel. These are terms designated by the legislature for conveying a fee simple estate, and certain absolute covenants are implied thereby, Stouffer unconditionally conveys the land to Slough, his heirs and assigns, and Slough by an independent covenant agrees to pay at the time therein mentioned, and actually gives bonds for the payments.—This is a personal credit given to Slough, and shews that he actually intended to convey by that instrument. Such are the express words of the deed, and from these alone we must judge of his intentions. The agreement to make Slough a good and sufficient deed on the 1st of May 1785, amounts only to a covenant of further assurance, and Slough was willing to run the chance of Stouffer's surviving his wife.

If there be sufficient words in a deed, to declare legally and clearly the party's meaning, it is sufficient. 2 Bl. Com. 298. —No lawyer would hesitate to say on a perusal of this deed, that a good fee simple estate was vested thereby. The case too is strengthened by Slough's receiving immediate possession, and exercising acts of absolute ownership. Stouffer can only blame his own negligence, in not informing the scrivener that he was desirous of entering into a mere agreement to convey, if such were his real intentions. This is in fact a dispute between the *plaintiff and creditors of Slough, [*397 who are to be considered as strangers. They trusted Slough from his visible and apparent property, and Stouffer lent his aid, to furnish him with part of this false credit. He should not have superior advantages to those who have sold him goods, and must now come in for a dividend. The money which has been expended in improvements in conse quence of the plaintiff's conduct, would have otherwise gone into the general mass of Slough's property, for the benefit of his creditors.

It is also of great moment to consider, that Stouffer has taken bonds for his money, has sued them, and recovered judgments thereon. If he had relied on the lands, as a lien, he should have commenced his ejectment on non-payment of the purchase-money, and not brought debt on his bonds. He waived his fancied lien thereby, and he shall not now be allowed to affirm and disaffirm the same thing.

One selling goods and receiving a note, it is actual payment. Aliter where there is a precedent debt. 2 Ld. Raym. 929. A purchases land of B, and mortgages back those lands for part of the purchase money, and gives a note to B for 200l. the other part thereof. A devises those lands to be sold for payment of his debts. This 200l. note though for part of the purchase money, shall not be preferred to other debts, nor be a charge on the land in equity. 2 Vern. 281.

* None of the cases cited by the plaintiff prove that the lien continues on the sale of lands, when bonds have been taken for the purchase money. The *dictum* of Ld. Loughborough in 1 Bro. Cha. Rep. 421, is of little weight, and from the report of that case it appears, the point remained undecided. The case of Fowel v. Heelis, in the note there, is contrary, and appears expressly in point. The circumstance of retaining the title deeds cannot be of so much consequence, as has been insisted on.

Haines's lessee v. Starret in Northumberland, did not receive the opinion of the court. The plaintiff was non-suited for want of the defendant's confessing lease, entry and ouster.

In Mitchell's lessee v. Le Roche, there was but a mere agreement to convey, and no personal security was taken.

In Campbell's lessee v. Sproat and Snodgrass, the words of the instrument were "sell and deliver;" and stress was laid by the judge who tried the cause, on this circumstance, that it would have vested Campbell with an estate for life only, there being no words of inheritance.

We are informed, that in the case of Switzer v. Garber at *Nisi Prius* in Cumberland, May 1788, it was resolved by the court, that a bond given on the sale of lands, was to be considered as a payment therefor.

*398] * When the parties are in equal equity the law must prevail. The legal title is in the assignees of Slough, under this instrument, which we contend has all the essentials of a deed. The creditors in general are concerned, who have the same claim to equity that Stouffer has; and though there may be an apparent hardship, he ought to be contented to come in as a creditor on the general funds of the estate. In a system of general laws, private inconveniences must always be submitted to. Stouffer must impute his loss to his own folly and negligence. He might have secured himself by a cautious conduct, and avoided conveying the lands. He might have obtained his money by suing at an earlier day,—

[Stouffer's Lessee *v.* Coleman.]

or by taking out his executions in due time, and levying on Slough's property. *Vigilantibus non dormientibus leges subserviunt.*

M'Kean C. J. I sit single in this cause; my brother Yeates, who was formerly of counsel with the plaintiff, declining to intermeddle therein. Reasonable proposals have been made on the part of the plaintiff, which have not been acceded to. It rests therefore to see what the law is, and how far the court can interpose, to oblige all parties to do what is just and reasonable.

The legal and equitable construction of the articles must determine whether Stouffer shall be considered as a general creditor of Slough, or whether he has a lien on the premises.

The question shortly is, whether he actually sold and conveyed, or only agreed to sell and convey on certain terms. The instrument has very strong expressions in it, in the present tense, "do grant, bargain and sell." But the true intention must govern, if it can certainly be discovered. For the reasons offered by the plaintiff's counsel, I am satisfied, that the honest and true meaning of the parties was, that the writing was intended merely as an agreement to convey: judging of all the parts together, it cannot reasonably be construed otherwise.

The difficulty which then occurs, is Stouffer's taking bonds for the purchase money. None of the cases cited come fully up to this point, except that in 1 Bro. Cha. Rep. 420, which was not finally decided on this question. The causes adjudged in this court do not go so far, but those cited from the books in England, fully prove the general doctrine, that as between the vendor and vendee of lands, and those claiming under the latter with notice, the lien continues. If Slough had sold over to a stranger without notice, a material difference would probably have arisen. Yet though bonds were taken, there is no proof either in writing or by parol, that they were accepted as actual payment, nor is there any receipt indorsed for the consideration *money. It is very important, [*399 and weighs much with me, that the plaintiff kept possession of his title papers, which is strong evidence that he considered the land as his security until the purchase money was paid. Why else else should he retain those muniments? This circumstance essentially distinguishes the cause before us, from Fowel *v.* Heelis, in 1 Bro. Cha. Rep. 421, where a contrary decree took place. [Vide Ambl. 724, where this case is more fully reported. Fonbla. Treat. Equ. 373.]

Had Slough's assignees brought their ejectment to recover the possession, I should be clearly of opinion, that without payment of the full consideration money and interest, they ought not to succeed. They stand in his place precisely. But here Stouffer comes into this court as plaintiff, to ask equity, which is part of our law: to obtain it he must do

[Stouffer's Lessee *v.* Coleman.]

equity himself. Valuable improvements are suggested to have been made by Slough, and it is also said he has committed great waste on the woodland. A verdict should pass for the plaintiff. Stouffer ought to pay the assignees for the solid and permanent improvements which have been made on the land, deducting the rents and profits received, and the injuries and waste done to the premises. We both recommend that persons should be appointed to make this estimate, and we think complete justice and equity will be done in this mode.

The defendant's counsel perceiving the opinion of the court, acquiesced in the propositions, and three of the jurors were accordingly appointed by the chief justice.

Verdict *pro quer.*

Messrs. Kittera and C. Smith, *pro quer.*
Messrs. Montgomery, M'Kean and Hall, *pro def.*

In 7 S. & R., 74, GIBSON, J., doubted whether Stouffer *v.* Coleman was accurately reported.

Cited in 11 S. & R., 332, in support of the proposition that the legal operation of a writing, plainly intended as an executory agreement, in which words of present conveyance are inconsistently introduced, shall be construed as executory.

Cited in 3 Rawle, 436, in support of the general proposition that if the intention is clear that an estate shall pass, courts will construe deeds in support of that intention, different from the formal nature of the deeds.

Cited for the same purpose in 4 Wh., 239 ; 7 Watts, 150 ; 27 Pa., 301 ; 37 Pa., 203.

Questioned as to the doctrine of equitable liens, in 48 Pa., 100.

Cited in 11 Pa., 94.