# Reading *et al.* *versus* Finney *et al.*

1. Unseated land is the debtor for taxes and may be sold no matter who may be the owner or in whose name assessed.

2. If the owner be not in default in the payment of taxes demanded of him his title cannot be divested.

3. Payment of the tax, whether by the owner or any one else, will avoid the sale.

4. Neither assessors nor a stranger can by the division of an entire tract without the knowledge of the owner affect his title.

5. The unseated land acts contemplate taxation (by single tracts following the title of the owner.

6. Where an entire tract is divided and returned without the consent of the owner, and both parcels are taxed, it is ·a double assessment.

7. A mis-statement of the number of acres in a tract will not vitiate a sale of the whole.

8. A warrant was originally assessed as 990 acres, afterwards it was assessed in two parcels as 559 and 150 acres ; it was sold to the commissioners as 559 acres. *Held*, that by this sale the commissioners acquired title to the whole warrant.

9. An intruder had the 150 acres marked off without the consent of the owner ; it was assessed as such and sold for taxes. *Held*, that the purchaser acquired no title.

10. Biddle and Noble, 18 P. F. Smith 279, distinguished; Brown *v.* Hays, 16 Id. 235, followed.

March 28th 1873. Before READ, C. J., AGNEW, SHARSWOOD and MERCUR, JJ. WILLIAMS, J., at Nisi Prius.

[Reading *v.* Finney.]

Error to the Court of Common Pleas of *Elk county*: Of January Term 1873, No. 22.

This was an action of ejectment, brought December 17th 1870, by John G. Reading and Charles Bartles against A. C. Finney and others, for a tract of land in Jay township, containing 154 acres more or less.

The tract is part of warrant No. 4896 to Wilhelm Willink, surveyed July 18th 1794, as 990 acres, in Clearfield county. The survey was interfered with by other warrants surveyed in 1785, known as the " Creek Surveys," so that warrant and survey No. 4896 could hold but 790 acres. The plaintiffs claimed the 154 acres under one Joel Woodworth, who they alleged had marked off from the east side of the 790 acres and occupied this tract which he estimated to contain 150 acres; it was sold for taxes in 1852, in Elk county, in which it then was; Elk county having been erected in 1844 and this part of Clearfield county included in it, the plaintiffs claimed under that sale.

Warrant No. 4896 had been assessed as 559 acres in Clearfield county, sold for taxes in 1832, bought by the commissioners of that county; in 1838 the commissioners sold it to Josiah W. Smith, by metes and bounds, describing the *whole* of warrant No. 4896, except that part covered by the " Creek Surveys." The defendants claimed the 150 acres as part of warrant No. 4896, and as included in the tax sale to the commissioners, and the sale of the commissioners to Mr. Smith.

The question was whether the 150 acres were so separated from the rest of the survey, as to exclude them from the operation of the tax sale of the warrant as 559 acres in 1832.

The case was tried August 6th 1872, before Vincent, J.

The plaintiffs gave in evidence the warrant and survey to Willink, of No. 4896; assessment in Clearfield county for 1826, No. 4896; 150 acres to Joel Woodworth and for 1829, same. They gave evidence that this 150 acre tract was sold for taxes for the years 1845 and 1846 in the name of Peter Clark, and treasurer's deed to Selah Morey, acknowledged September 25th 1847. Deed, November 22d 1847, Selah Morey to Erasmus Morey; assessment 1846, 1847, in the name of Peter Clark, 150 acres, No. 4896; taxes paid by Erasmus Morey. Assessment 1850, 1851, Erasmus Morey 150 acres, No. 4896, sold for taxes June 14th 1852, and treasurer's deed October 8th 1852, made to William P. Luce; assignment May 6th 1854, Luce to Charles W. Blake. Deed, December 29th 1854, Blake to John Gibson, all for the same 150 acres. Will of Gibson proved March 21st 1865, authorizing his executors to sell his land in Elk county. Deed, July 11th 1866, executors of Gibson to plaintiffs for same land.

The assessments given in evidence in Clearfield county of No. 4896, were as follows:—

[Reading v. Finney.]

| 1813. | No. 4896 | 990 acres | Owner unknown. | Val. $125. |
|---|---|---|---|---|
| 1821. | " | " | Wilhelm Willink. | " 249. |
| 1823. | " | " | " " | " 742. |
| 1826. | " | 159 | Joel Woodworth. | " 119. |
| | " | 559 | Gilliam Demorest. | " 137. |
| 1829. | " | 150 | Joel Woodworth. | " 54. |
| | " | 559 | Alexander Boyd. | " 205. |
| 1832. | " | 150 | (No name.) | " 37. |
| 1833. | " | 150 | Joel Woodworth. | " 37. |
| 1838. | " | 150 | Peter Clark. | " 38. |
| 1841. | " | 559 | Wilhelm Willink. | " 278. |
| 1842. | " | 150 | Peter Clark. | " 150. |
| 1843. | " | " | " | " 150. |
| | " | " | " | " 150. |

Plaintiffs gave evidence further, by the deposition of Oliver Gardner that Woodward claimed to own the 150 acres about 1820; a man named Gellatt claimed to own afterwards and sold to Clark. Erasmus Morey's testimony was about the same; he testified also that he did not know from whom Woodworth bought.

Charles Webb testified that between 1823 and 1831, he met Woodworth, who said he was going to make an improvement in the north-east part of No. 4896; witness had not heard of his claiming the land before that time.

Plaintiffs gave evidence that Woodworth whilst he claimed to own the land said it had been surveyed off. They gave evidence also, of a survey counting from 1822, which contained 157 acres strict measure.

The defendants gave in evidence, assessment 1813 of No. 4896, in Clearfield county, "owner unknown" 990 acres. Deed, Alexander Boyd to Gilliam Demorest, of No. 4896, 1050 acres. Assessment in 1821, 1823 in the name of Willink, 990 acres, 1826, No. 4896, 559 acres; "Demorest," 1829, No. 4896, 559 acres, "Alexander Boyd." From treasurer's unseated land book from 1822 to 1832 inclusive: "1830 Alexander Boyd, No. 4896, 559 acres, Gilliam Demorest." Sold to county commissioners at sales of 1832, Gilliam Demorest, No. 4896, 559 acres and conveyed to them by treasurer's deed, acknowledged January 2d 1833.

Deed, commissioners of Clearfield county dated February 3d 1838, to Josiah W. Smith; the boundaries in the deed include all No. 4896, except the part cut off by the "Creek surveys"; the recital was, "being part of a larger tract of land which was surveyed 18th of July 1794, in pursuance of a warrant dated February 3d 1784, granted to William Willink and known by No. 4896, containing 990 acres, &c.

Assessment, 1838. No. 4896 559 acres Willink.
" 1841, 1842, 1843. " " J. W. Smith.

Taxes paid by J. W. Smith March 19th 1844. No. 4896, 1841, 1842, 1843—"Willink." "Taxes paid by J. W. Smith, 559 acres."

[Reading *v.* Finney.]

Elk county, 1844, No. 4896, 559 acres "paid in full March 9th 1848, by J. W. Smith."

Smith conveyed to William Woodman, June 14th 1847, all the tract No. 4896 as described in the deed from the county commissioners to him. The title of Smith was admitted to be in the defendants.

The defendants gave in evidence also surveys of the whole of No. 4896, as claimed by them.

The plaintiffs, in rebuttal, gave evidence by O. Gardner, that he had lived near the property since 1828; the first owner of the 150 acres of whom he had knowledge was Potter Goff; he conveyed to Joel Woodworth; he to Richard Gellatt; he sold to Clark, and the land for several years was called Clark's land; witness did not recollect any survey of the 150 acres; had no personal knowledge of the boundaries; Woodworth exercised acts of ownership over the 150 acres and paid taxes on it.

The following are points of the parties with their answers:—

*Plaintiffs':* "5. If the jury believe that the hemlock, and line running south therefrom of 1822 (or 1823) were marked for the western boundary of the 150 acres, assessed successively to Woodworth, Clark and Morey, the plaintiffs are entitled to recover all the land east of said boundary."

Answer: "This is correct, if you believe that Woodworth had any title from the original warrantees, or that he could assert against them, and that Smith did not acquire by deed from the commissioners their title to the whole, as we have explained in our general charge."

"6. If the jury believe that Joel Woodworth's claim to 150 acres, was designated by marks on the ground severing it from the remainder of the warrant, leaving 559 acres and upwards remaining, and that the assessment of warrant 4896, in two parts, of 150 acres and 559 acres respectively, prior to 1852, as well as since, had reference to such a division, then defendants have no title to the land in controversy, and the plaintiffs must recover."

Answer: "It does not follow that plaintiffs can recover even if you find the facts as stated. It may be that defendants have no title to this 150 acres, but it does not follow that plaintiffs have; and in such a case, the defendants being in possession, have the best position, as we have explained in our general charge."

*Defendants':* "2. The deed from the commissioners to Josiah W. Smith gave to him and to those holding under him, such a title as entitled them to be treated by the assessors and commissioners, as owners of said lands within said boundaries, and entitled them, so far as respected taxation of said land, to all the rights of owners, and especially so as against the present plaintiffs, whose title originated by tax sale long after the Smith title had been acquired and put on record."

[Reading *v.* Finney.]

Answer: "This is correct, unless the plaintiffs have a title good as against original warrantee, as we have explained to you."

"4. The assessors and commissioners of Elk county, could not under the circumstances in evidence, lawfully make a separate assessment and sale of 150 acres out of the piece which was assessed as 559 acres, without the knowledge and consent of the owners of that piece, and such assessment and sale, if made, conferred no title."

Answer: "This is correct, but we leave to you as a fact who was the owner of the 150 acres as explained in our general charge."

In charging the jury the court said: * * *

"The whole title held by Smith to the land in dispute, by virtue of his deed from the commissioners of Clearfield county, is now vested in the present defendants, and it is a good primâ facie title against anybody, except, perhaps, the original warrantees, or their heirs or grantees. * * *

"The plaintiffs must recover on the strength of their own title, and not on the weakness of the defendants', and until they show such a title in Woodworth as could be asserted against the real owner of the land, they cannot recover."

The verdict was for the defendants.

On the removal of the record to the Supreme Court, the plaintiffs assigned for error the answers to the points and the foregoing portions of the charge.

*J. G. Hall,* for plaintiffs in error.—Sale of unseated land for taxes passes the title to the purchaser in whose name soever taxed: Strauch *v.* Shoemaker, 1 W. & S. 166. It was the duty of the owner to return the correct amount of his land, and he cannot complain that the part omitted is taxed separately and sold: Williston *v.* Colkett, 9 Barr 38. There was an actual separation of the 150 acres; it could therefore be taxed and sold by itself: Biddle *v.* Noble, 18 P. F. Smith 279.

*J. H. Orvis* and *J. Linn* (with whom was *J. B. McEnally*), for defendants in error.—Woodworth was an intruder and could not question the validity of the treasurer's or commissioners' sale: Troutman *v.* May, 9 Casey 455; Dikeman *v.* Parish, 6 Barr 210; Shearer *v.* Woodburn, 10 Id. 512. The severance must be by the owner of the tract: Brown *v.* Hays, 16 P. F. Smith 229.

The opinion of the court was delivered, May 17th 1873, by

SHARSWOOD, J.—It is certainly true, that under the Acts of the General Assembly, providing for the sales of unseated lands for taxes, the land is the debtor, and is subject to sale without

regard to the ownership ; no matter in whose name it may be assessed : Strauch *v.* Shoemaker, 1 W. & S. 166.   But it is also true that these acts, and the decisions of this court in the construction of them, have not neglected to look to the protection of the rights of the owner, so that if he is not in default in the payment of the taxes on the land demanded of him, his title cannot be divested. Hence, proof of the actual payment of the tax avoids the sale. Nay, if the tax be paid, though not by him, it will avail him; for if two men have surveys which interfere with each other, and he whose warrant and survey are junior, pays the tax on all the land included in his survey, and he who has the senior warrant and survey, does not, and the land surveyed to him is sold for taxes, such sale will pass no title to the interference on which the tax has been paid by the other : Hunter *v.* Cochran, 3 Barr 105. Hence, also, it is not in the power of the assessors—much less of a mere stranger or trespasser—by the division of an entire tract without his knowledge and consent, to jeopard his title.   "The acts relating to the assessment of lands," says Mr. Justice Agnew, "are plain, and require the assessor to assess and return the lands in his township in single tracts, according to their ownership.   He may follow the sale or division of the tract by the owner ; but he has no power himself to cut up the property of a single owner and return it in parcels.   The acts on the subject are collated by Huston, J., in Morton *v.* Harris, 9 Watts 326, showing conclusively that the entire process of assessment, from the beginning to the end, contemplates taxation and sale by single tracts, following the title of the owner:" Brown *v.* Hays, 16 P. F. Smith 235. Where an entire tract is divided and returned without the act or consent of the proprietor, and both parcels are charged with taxes, either by the number of the warrant or the name of the original warrantee or subsequent owner, it is a case of double assessment ; for nothing is better settled than that a misstatement of the number of acres contained in a tract will not vitiate a sale of the whole.   In Williston *v.* Colkett, 9 Barr 38, a tract was originally assessed in the name of the warrantee for nine hundred and ninety-nine acres.   During subsequent years the amount was reduced as sales were made.   It was finally assessed as two hundred acres, when in fact it contained six hundred.   A treasurer's sale, made under such an assessment, was held to pass the title to the whole six hundred.   Brown *v.* Hays, already cited, is a remarkable illustration of the same doctrine.   There was an assessment of a tract of one thousand and twenty-six acres by the original number of the warrant, and the name of the warrantee in Polk township, Jefferson county.   By the division of the township, a part of it was thrown into a new township, named Heath, and there separately assessed as three hundred acres.   The taxes on the entire tract in Polk township, though assessed as only seven hun-

[Reading *v.* Finney.]

dred and twenty-six acres, were paid by the owner. It was held that the purchaser, at a tax sale of the three hundred acres assessed in Heath township, took no title. "The number of acres," says Mr. Justice Agnew, "is simply descriptive, and would not overturn the number of the tract, the name of the warrantee, and the duty of the assessor." It seems to follow logically from these premises, that the return and assessment of warrant No. 4896, in this case, without the knowledge and consent of the owner to such division, was wholly without warrant of law. The tract was assessed at first in the name of Wilhelm Willink, for nine hundred and ninety acres. From 1826, it appears on the book in two parcels; one of one hundred and fifty acres, in the name of Joel Woodworth, and the other of five hundred and fifty-nine, in the name of Gilliam Demorest. Demorest paid the taxes for 1826–7–8. In 1829 and 1830, it was assessed in the name of Alexander Boyd. In 1832 the treasurer sold it to the commissioners of the county for unpaid taxes of 1830 and 1831, and a deed was duly made to to them for the said tract as five hundred and fifty-nine acres. The entire tract, including both parcels, was omitted from the assessment list from 1832 until 1838, that is, during the period of time that the title was in the county. The cases cited, I think, show that the commissioners, by the treasurer's deed, acquired title to the whole tract No. 4896. They so considered, and when in 1838 they sold to Josiah W. Smith, they conveyed to him by metes and bounds the entire tract, as it was claimed by the owner. It was less, indeed, than the amount returned in the original survey, because there were older warrants and surveys, which cut off a part of it by interference. Hence, the deed to Josiah W. Smith, after describing the land by metes and bounds, recites it as "being part of a larger tract of land which was surveyed July 18th 1794, in pursuance of a warrant dated 3d February 1794, granted to Wilhelm Willink and others, and known by No. 4896, containing nine hundred and ninety acres." There is certainly nothing in this recital which limits the previous description of the land. Subsequent to 1838, Smith and his assigns paid the taxes on the whole tract as five hundred and fifty-nine acres, including the taxes of 1850 and 1851, for non-payment of which the parcel assessed as one hundred and fifty acres was sold to Luce, under whom the plaintiff below claimed. Upon this evidence, the instruction of the learned judge to the jury was right. "If you believe that Woodworth had the boundaries of his claim of one hundred and fifty acres actually marked on the ground, and returned to the assessor as his land, with the knowledge of the real owner, a sale of it for taxes would give the purchaser a good title. But an intruder, such as Woodworth appears to have been, cannot by such separate claim and assessment acquire a title against the real owner who does not assent to such division, and who pays taxes

[Reading *v.* Finney.]

on the whole tract." We think the plaintiff in error has no right to complain of the charge of the learned judge.

It has been strongly urged, however, that an actual line run on the ground by any claimant, with or without title, was sufficient authority to the assessor to return such survey as a separate tract. The assessor, it is said, has nothing to do with the title. He returns the tracts as he finds them on the ground. Perilous, indeed, would be the condition of the owner if such were the law. The assessor finds a line marked by trees in the wilderness, and is told that somebody claims that part of what he knows to be one entire tract, under an original survey. He returns it as a separate tract for taxation. The owner, ignorant of this transaction, pays all that he is charged with for the tract he holds. He assumes the number of acres described in his deed to be the true content of his survey. He sleeps in security, but wakes up to find that, perhaps, the most valuable part of his property has been swept from him, without his default. It is supposed that Biddle *v.* Noble, 18 P. F. Smith 279, supports the contention, that all that is required to sever a tract of unseated land for taxation, is a line actually marked on the ground. But this is a misapprehension of that case. The entire tract there was seated, in consequence of a settlement upon part. The owner sold to the settler, two hundred acres where the improvement was, so as not to interfere with the claim of any other settler. It was held that in the absence of a line on the ground, made with notice to the vendor, there was no severance, and that a sale of the remainder of the tract as unseated was void.                                    Judgment affirmed.