# West, Appellant, *v.* Hanna.

*Ejectment—Rule to bring ejectment—Finality of order making absolute rule—Appeals—Acts of March 8, 1889, P. L. 10, and April 16, 1903, P. L. 212.*

1. An order in proceedings under the Act of April 16, 1903, P. L. 312, making absolute a rule to bring an action of ejectment is a final order from which an appeal lies; and if the respondent in such a proceeding does not appeal, but brings his ejectment, he cannot in the action of ejectment raise any objection to the regularity of the original proceedings. The ejectment is to be tried as if the plaintiff had brought it voluntarily.

*Ejectment—Two ejectments—Acts of May 8, 1901, P. L. 142, and April 4, 1907, P. L. 43.*

2. A verdict in ejectment, where the action was brought prior to the statute of May 8, 1901, P. L. 43, abolishing the rule requiring two ejectments, bars a second ejectment between the successors in title to all the parties in the original ejectment, where the second ejectment is brought more than one year after the passage of the Act of April 4, 1907, P. L. 43, which provides that where a verdict or judgment had been recovered prior to 1901 no new ejectment shall be brought between the same parties, or their successors in title, unless such suit be brought within one year from the date of the passage of the Act of April 4, 1907, P. L. 43; but if in the second ejectment there is conflicting oral testi-

mony as to the exact location of the line between the tracts established by the first verdict and also as to the establishment of a consentable line after the date of the first verdict and the knowledge in the plaintiff thereof, the case must be submitted to the jury.

Argued March 10, 1914.　Appeal, No. 8, March T., 1914, by plaintiff, from judgment of C. P. Dauphin Co., Sept. T., 1910, No. 12, on verdict for plaintiff in case of Isaac D. West v. Alfred F. Hanna.　Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.　Reversed.

Ejectment for land in Lykens borough, Jackson township and Winonisco township.　Before McCARRELL, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[That action (of ejectment) was brought in November, 1870, in this court.　It was tried in this court and resulted in a verdict in favor of Barrett, who claimed under the Barnett warrants, for 600 acres of land less sixty-two acres, or about 538 acres of land.　That is to say, in this court, upon the trial of that case, after investigating the surveys and hearing the claims of the Barretts, who were claiming under the Barnett warrants and the claims of Gratz and others, who were claiming under the Gilbaugh and Wilson warrants, the verdict was in favor of Barrett, the plaintiff, for only about 538 acres of the land covered by the Barnett warrants. That action was not finally disposed of until about 1875, when a motion for a new trial was overruled and nothing further done.

While the action was pending and before it was finally decided by refusal of the motion for a new trial the Barretts conveyed their title to Anton F. Englebert. The necessary implication from the verdict that was rendered in that case is that Mr. Gratz, the defendant in the action, had title to the remainder of the Barnett warrants not covered by the finding of 538 acres in

favor of the Barretts, the plaintiffs in that action. The necessary conclusion is that the title to the remainder was vested in Mr. Gratz, claiming under the earlier warrants to Gilbaugh and Wilson.] [2]

[Nothing further, as we have said, was done in that action. Mr. Englebert had gotten a deed prior to the final determination of the action, and in 1878, according to the uncontradicted testimony in this case, Mr. Englebert, then holding the Barnett title and having more than 900 acres described in the deed given him by the Barretts, met Mr. Gratz, the claimant to the other land, and according to the uncontradicted testimony they established a line showing the division between the lands belonging to Mr. Englebert and the lands belonging to Mr. Gratz. This line, according to the uncontradicted testimony of Mr. Low, who located by Mr. Hoffman, who was employed by the parties—by Mr. Gratz and Mr. Englebert—for that purpose. The line was located. Low says he saw Hoffman making the surveys, and that the line was located and marked upon the ground appears from the testimony of Mr. Van Horn, a witness for the plaintiff, who says that, after he was shown the Englebert map, on which Mr. Englebert had noted the lines of his property, after he had the Englebert map and went upon the ground he found the marks and lines as called for by that map. So that according to the uncontradicted testimony in this case there appears to have been a line established between Mr. Englebert and Mr. Gratz in 1878, and we recall no testimony that after that line was thus established Mr. Englebert ever claimed any of the land lying on the Gratz side of the line, and Mr. Gratz never claimed any of the land lying on the Englebert side of the line. They established that line and, according to the uncontradicted testimony, as we recall it, Mr. Englebert and Mr. Gratz held and enjoyed possession of these lands according to that line thus established by the surveys made by Mr. Hoffman, who represented

both parties. And Mr. Englebert continued to hold it during his life, and his conveyances show that a division of the remainder of the Barrett tract was recognized, and that in one part there was a tract of 531 acres and in the other a tract of 439 acres, the 439 acres being the part belonging to Mr. Gratz, according to the line thus located, and 531 acres being the part on Mr. Englebert's side of the line. The lands were so held according to that line down until the death of Mr. Englebert, and that line seems to have been recognized by the heirs of Mr. Englebert, for when they came to consider Mr. West's proposition to purchase their lands in 1908, they were of opinion, and so stated to Mr. West, that they did not own the 439 acres, that if Mr. Englebert ever had title to that land, he must have disposed of it, because they did not claim it; and Mr. West, after having been given the papers which the Engleberts had, looked them over and came back and assured them that on the papers, according to the records which he had examined, the title to the 439 acres seemed to be in Mr. Englebert and therefore he asked and obtained a special quitclaim deed for the 439 acres, which, according to the uncontradicted testimony seems to have been set off for the use of Mr. Gratz and enjoyed by Mr. Gratz from and after the survey made by both in 1878. This you will remember, gentlemen, was thirty years after that line had been run in 1878, and, if the case was in such shape that we felt obliged to leave that question to you and to be determined as matter of fact, we would say to you that, if you find from the uncontradicted testimony in this case, or from the weight of the evidence in this case that from and after 1878 Mr. Englebert and those claiming under him and Mr. Gratz and those claiming under him recognized the line established by Mr. Hoffman in 1878 as the dividing line between their respective properties, and that each from and after the establishment of that line held and enjoyed the lands in accordance there-

with and had possession of it in accordance therewith, then that each would have acquired title by reason of the lapse of time. That would have given Mr. Englebert title to the 531 acres and Mr. Gratz and those claiming under him a title by prescription to the remaining 439 acres.] [3]

[Following that this action was brought, it cannot be insisted that this action of ejectment was brought because of the order of this court. This court had before it no claim asserted by anyone with respect to any of the lands except the 439 acres. Mr. West was not bound to bring any action at all. It was simply requiring him to bring this action if he desired to assert title and preventing him from asserting any title if he did not bring it within the statutory time. The bringing of the action was a matter for Mr. West's voluntary consideration and action.] [4]

[So that according to the law of the state, the court, as we view it, cannot permit this action of ejectment to be prosecuted to a conclusion in his favor by the present plaintiff, Isaac D. West. His action is barred because of the former action of ejectment, and any action by anyone claiming under the Englebert title was barred before he purchased this land, and we shall therefore be obliged to instruct you in accordance with this view of the law.] [5]

Defendant presented this point:

If the verdict be for the defendant it should be molded in substantially the following form:

Verdict for defendant for so much of the land described in the præcipe and summons as is bounded and described as follows:

"Beginning at stones; thence by land formerly of Edward Gratz south 85° 15' east 165.7 perches to stones; thence north 15' east 78 perches to stones; thence by lands now or late of Lykens Valley Coal Company and others north 82° 21' east 198.5 perches to post; thence by lands formerly of S. H. Barrett

south 8° east 213 perches to post; thence by land formerly of Edward Gratz south 82° 45' west 404.5 perches to stones; thence by land formerly of Gratz and Haldeman north 47° 15' west 47 perches to stones; thence north 42° 45' east 78 perches to stones; thence north 8° 15' west 83 perches to stones; the place of beginning, containing 439 acres, more or less." *Answer:* This point we affirm, and in accordance with its affirmance and because of the fact that this present action was not brought within one year from the date of the passage of the act of April 4, 1907, we say to you, as matter of law, that Mr. West cannot prosecute this action so as to obtain in his favor a verdict for any part of the lands that have been claimed here by him, and the defendant, who upon the record after the bringing of this action disclaimed title to all the lands mentioned in the summons of ejectment save the 439 acres, which have been particularly described by him, is entitled to your verdict for that land, and we therefore instruct you to render the following verdict:

"And now, November 25, 1912, the jury find in favor of the defendant for so much of the land described in the præcipe and summons filed in this case as is bounded and described as follows, to wit: Beginning at stones; thence by land formerly of Edward Gratz south 85° 15' east 165.7 perches to stones; thence north 15' east 78 perches to stones; thence by lands now or late of Lykens Valley Coal Company and others north 82° 21' east 198.5 perches to post; thence by lands formerly of S. H. Barnett south 8° east 213 perches to post; thence by land formerly of Edward Gratz south 82' 45° west 404.5 perches to stones; thence by land formerly of Gratz and Haldeman north 47° 15' west 47 perches to stones; thence north 42° 45' east 78 perches to stones; thence north 8° 15' west 83 perches to stones, the place of beginning, containing 439 acres, more or less."

This, gentlemen, is the conclusion we have reached and we therefore instruct you to find such verdict. [20]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (2–5, 20) above instructions, quoting them, and (1) order making absolute rule to bring ejectment.

*W. H. M. Oram* and *Lyman D. Gilbert*, for appellant.— The order making rule absolute was void for want of jurisdiction, as not being authorized by the Act of March 8, 1889, P. L. 10: Fearl v. Johnstown, 216 Pa. 205; Titus v. Bindley, 210 Pa. 121; Mildren v. Nye, 240 Pa. 72; Spangler v. Trogler, 228 Pa. 217.

The objection to the jurisdiction was duly and properly raised: Musselman's App., 101 Pa. 165; Williams v. Fowler, 201 Pa. 336; Harris v. Mercur, 202 Pa. 313.

The question of the consentable line was under the conflicting evidence for the jury: Fisher v. Larick, 3 S. & R. 318; Bird v. Smith, 8 Watts, 434; Billington v. Welsh, 5 Binney, 129; Hagey v. Detweiler, 35 Pa. 409.

*C. H. Bergner*, with him *L. M. Neiffer*, for appellee, cited: Fearl v. Johnstown, 216 Pa. 205.

OPINION BY PORTER, J., July 15, 1914:

Alfred F. Hanna, the defendant in this present action, had presented his petition to the court below, at No. 653, September Term, 1910, averring that he was the owner and in possession of, inter alia, a tract of land containing 439 acres, more or less, and that Isaac D. West claimed title to said tract of land. The petitioner "asserting his ownership of the piece of land aforesaid and his possession and right of possession thereof, and denying the claim of said Isaac D. West to the title of said piece of land," prayed the court to grant a rule upon the said Isaac D. West to bring his action of ejectment for the said tract of land within six months of the service of such rule upon him, or show cause why the same should

not be brought. The court granted the rule to show cause, which was duly served upon Mr. West. West filed an answer, testimony was taken, and after a hearing the court, on April 25, 1911, made an order "that the rule heretofore granted be made absolute and that the respondent, Isaac D. West, bring his action of ejectment for the said tract of land described in the petition within fifty days from the date hereof." Isaac D. West brought this action of ejectment, on June 13, 1911, to No. 12, September Term, 1911, of the court below. The issue having been arrived at the action of ejectment was tried in the court below, on November 19, 1912, and having resulted in a verdict and judgment in favor of the defendant the plaintiff appeals.

The petition of Hanna, at No. 653, September Term, 1910, for a rule on the plaintiff to bring ejectment, alleged the facts necessary to invoke the jurisdiction of the court and was clearly within the provisions of the Act of March 8, 1889, P. L. 10, as amended by the Act of April 16, 1903, P. L. 212. When the court made absolute the rule on Mr. West to bring an action of ejectment, or be barred, that was a final order so far as that proceeding was concerned, and the respondent was in position to appeal if he desired to question the regularity of that order: Fearl v. Johnstown, 216 Pa. 205. If the respondent desired to have that action of the court reviewed it was incumbent upon him to take his appeal within the period required by statute. Mr. West never appealed from that order. Not having appealed, he still had two courses open to him: if he did not desire to assert title to the land, he could simply do nothing, and after the period fixed by the order he and those claiming under him would be barred of any right of action; or if he believed that he had a good title to the land he could bring his action of ejectment. Having brought an action of ejectment, that action is to be disposed of and the rights of the parties determined upon the principles which control all actions of

ejectment. The distinction between proceedings under the act of 1889 and those under the Act of June 10, 1893, P . L. 415, is clearly drawn in the opinion of Mr. Chief Justice MITCHELL, in Fearl v. Johnstown, supra. The act of 1893 provides for the framing of an issue, in that proceeding, to determine the rights of the parties. The act of 1889 makes no provision for anything of that kind, and the respondent in proceedings under it is merely put to an election as to a future course of action. When he elects to bring an action of ejectment that action is collateral to the proceeding under the act of 1889 and upon the trial of the issue arrived at in the action. of ejectment he cannot raise any question as to the regularity of the order made in the original proceeding. The petition of Hanna averred the facts necessary to give the court jurisdiction under the act of 1889, and to permit . the present plaintiff, upon the trial of the issue in the action of ejectment, to raise any question as to the sufficiency of the evidence produced at the hearing of the proceeding under the statute, to sustain the averments of that petition, could only tend to becloud the real issue. The attempt to do this in the present case led to a result rather unusual; the plaintiff, who had brought the action and was asserting the right to recover, requested the court to charge: "That as to the subject-matter and all rights, titles, interests, matters and things in this action, the court is without jurisdiction." The learned judge of the court below properly held that this action was to be tried as if the plaintiff had brought it voluntarily. All the specifications of error founded upon alleged irregularity in the original proceeding, under the act of 1889, are overruled.

The plaintiff brought his action of ejectment not merely for the 439 acre tract which Hanna had described in his petition but for a tract containing 970 acres, of which the 439 acre tract was a part. The defendant filed a disclaimer for 531 acres of .the larger tract and claimed by metes and bounds the 439 acre tract, and

as to the latter the parties arrived at an issue and went to trial. The land was situated in a mountainous region, and the evidence involved the not unusual features of interfering warrants, surveys and returns. The questions presented by the specifications of error do not render necessary any extended review of the evidence. The defendant offered in evidence the record at No. 394, November Term, 1870 of the court of common pleas of Dauphin county which disclosed that an action of ejectment had been brought by the predecessors in title of this plaintiff against the predecessors in title of the defendant, for the same large tract of land for which the plaintiff had brought ejectment in this case, but in the earlier action the tract was averred to contain 901 acres "and allowance" more or less, instead of 970 acres, as averred in the present case. There was, however, no question that these two large tracts of land were identical. The earlier action of ejectment had been tried and, on February 19, 1874, resulted in a verdict "in favor of the plaintiff 600 acres, less sixty-two acres and seventeen perches as per deed from the executors of Jacob Miller to Edward Gratz, recorded in Deed Book M, vol. 3, p. 319." The defendant also produced evidence which would have certainly warranted a finding that the defendants in that earlier action of ejectment and the grantee of those who had been plaintiffs in that action, that is, the predecessors in title of both the plaintiff and the defendant, had in the year 1878 agreed upon and marked upon the ground the line dividing their lands, as established by the verdict in the action of ejectment. The evidence would have warranted a finding that this plaintiff had distinct notice and actual knowledge of the existence of that consentable line at the time he acquired title. This evidence was so convincing that the court below felt warranted in giving binding instructions in favor of the defendant.

The law at the time the verdict in that old action of ejectment was rendered required two verdicts and

judgments, in favor of the same party, to conclusively determine title to real estate. The evidence clearly indicates that the parties to that early controversy, having arrived at the conclusion that it was better to compose their differences, agreed upon a line between their respective parts of the large tract, which no doubt accounts for the fact that no second ejectment was for so many years brought. The Act of May 8, 1901, P. L. 142, abolished the rule requiring two ejectments in actions at law to determine the ownership of real estate by providing: "That where one verdict shall, in any writ of ejectment between the same parties, be given for the plaintiff or defendant, and judgment entered thereon, no new ejectment shall be brought; but such verdict and judgment thereon shall be final and conclusive and bar the right." This act, however, only applies to actions brought after the day of its approval, and had no effect upon the rights of the parties to this action. The Act of April 4, 1907, P. L. 43, provides: "That where, prior to the ejectment act of one thousand nine hundred and one, a verdict or judgment in ejectment shall have been given for the plaintiff or defendant no new ejectment shall be brought between the same parties, or their successors in title, unless said suit be brought within one year from the date of the passage of this act; but such verdict or judgment shall be final and conclusive, and bar the right, at the expiration of one year from said date as aforesaid." This statute did not take from any party or litigant any right which they then possessed, it only fixed a limit to the time within which they must assert their existing rights. The purpose was to free real estate from stale claims, and to fix a limit to the time within which such claims, after having been once determined by a verdict not to be well founded, should be reasserted. The present case comes directly within the provisions of this statute. There had been a verdict in ejectment between the parties, all of the parties, under whom the plaintiff and

defendant, respectively, claim, and that verdict was prior to the statute of May 8, 1901, P. L. 43. The plaintiffs in that action had asserted title to the whole of the large tract, the finding of the jury in their favor for 538 acres of that tract, only, was by necessary implication a finding that, as against the defendants in the action, they were not entitled to recover the balance of the tract. The court below was clearly right in holding that that verdict was conclusive upon the parties to the present action. There was, however, under the evidence, a question as to the exact location of the line between the tracts established by that verdict, when it came to applying that line to the land in its present condition. The litigants must take the parts of the tract given them by the verdict, but in order to identify those parts oral evidence was introduced, and the credibility of the witnesses was a question for the jury; and so with regard to the establishment of the consentable line and the knowledge of the plaintiff, at the time he acquired title, of the existence of that line; the evidence upon those questions was largely oral. The weight of that evidence may have been clearly with the defendant, but it was not entirely uncontradicted. This being so the questions of fact ought to have been submitted to the jury, and the court fell into error in giving binding instructions in favor of the defendant. The specifications of error which refer to the action of the court in giving binding instructions in favor of the defendant are sustained, and all the other specifications are dismissed.

The judgment is reversed and a new venire awarded.