## McGuire, Appellant, v. Gilbert.

26

Argued October 3, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and WHITMORE, JJ.

*Walter E. Glass*, for appellant.

*I. Morton Meyers*, and with him *James A. Graham* and *Russell R. Yost*, of *Graham, Yost & Meyers*, for appellee.

OPINION BY LINN, J., January 30, 1931:

Plaintiff appeals from judgment for defendant in ejectment. The land is a lot 40 feet by 150 feet in Westmont, (formerly Upper Yoder Township) Cambria County. In 1915, with other land, the lot was owned by Palliser. In that year he agreed to sell the lot to defendant, and, 1920, delivered to him a deed dated February 6 and recorded May 11. The agreement of sale was not offered in evidence, nor were its terms proved, though one witness stated defendant "was paying so much a month on the property." For all that appears, title may not have been intended to pass to defendant, vendee, until the total consideration, $450, was paid, the vendor retaining title as

security.; in any case, the record shows no title in defendant to the land described in the writ until 1920.

In 1916, the following tax assessment appeared on the books: "1916 Cambria County assessment, Upper Yoder Township, name of taxable—A. E. Gilbert (non-resident); 1 lot; description and location of houses and lots—Palliser plot; value of houses and lots for 1916—$220; county tax $.77; 'from John Palliser,' aggregate value for county purposes $220."

At the trial plaintiff claimed title to the lot so assessed by tax-deed from the county-treasurer dated June 10, 1918, recorded July 14, 1920, pursuant to sale for taxes—77 cents—alleged to have been unpaid for the year 1916. In his declaration and abstract of title he described the lot as follows: "Beginning at a stake on the easterly side of North Avenue, a distance of 300 feet from the intersection of North Avenue and West Street; and a frontage of 40 feet on North Avenue and extending back between parallel lines a distance of 150 feet to a 16 foot wide alley, and having property now, or formerly, of George Palliser on one side, and on other side property now, or formerly, of John Palliser": It will be observed that there is nothing in either description to indicate that both described the same lot, a condition resulting in a charge to the jury to find whether both described the same land, for, if the land sold for taxes was not what plaintiff claimed in this suit, he was not entitled to recover.

The defense was that the lot described in plaintiff's declaration was assessed twice, once to him, and, at the same time, to Palliser as part of other land of Palliser's (from whom defendant had then not yet received a deed) and that Palliser had paid the tax for 1916, with the legal result that no tax was due and the tax-sale void.

The important question of fact, as the case was tried, therefore was whether there was a double assess-

ment,—if the lot assessed as above was the same lot described in plaintiff's declaration, was it part of the other land assessed to Palliser? The jury was instructed that if it found that Palliser paid the taxes "on the tract which includes [defendant's] lot—if the tract includes lot number 39 [of which the lot in suit was part] then the taxes were paid by Palliser on the ground which would cover the [defendant's] lot ......" a verdict for defendant would be justified; see Everhart v. Nesbitt, 182 Pa. 500. Such a verdict was found and judgment was entered.

A number of questions are raised, but none is material, as we understand the record. From what has been said, it is obvious that a verdict could not have been directed for plaintiff, and that assignments of error based on that refusal must be overruled.

It appears that the action was brought in consequence of an order, made pursuant to the petition of the present defendant, for a rule on plaintiff to show cause why he should not bring ejectment against defendant in accordance with the Act of April 16, 1903, P. L. 212, amending the Act of March 8, 1889, P. L. 10, entitled "An act to settle the title to real estate." The jurisdictional fact that defendant was in possession having been found (Hemphill v. Ralston, 278 Pa. 432, 434) that rule was made absolute. No appeal was taken from that order. It did not of itself, however, determine the title to the land: Notley's Petition, 263 Pa. 377, 384; that remained to be done in the ejectment suit if one followed.

In the ejectment which was then brought, plaintiff offered in evidence the record of the proceeding on the rule to show cause, for the following purpose (stated by his counsel) "...... of showing the identity of the land in dispute in this case, and ...... the date when the plaintiff's title was first questioned by the defendant." Objection to the offer was sustained. As

to the identity of the land, the record did not support the offer; while the petition recited the same description as is contained in plaintiff's declaration, it is not evidence that it is the same land described in the assessment; the date when the plaintiff's title was first questioned was immaterial. "This action was to be tried as if the plaintiff had brought it voluntarily": West v. Hanna, 57 Pa. Superior Ct. 445, 453. When the same record was later offered by plaintiff "for the purpose of showing that the court found as a fact at the time the proceeding was heard, that the defendant was in possession," it was admitted.

When taxes have been assessed on land and paid, the land cannot be sold for alleged non-payment of that assessment, merely because the tax was paid by one other than the party in whose name the land was assessed: Montgomery v. Meredith, 17 Pa. 42, 47; Ankeny v. Albright, 20 Pa. 157; Reading v. Finney, 73 Pa. 467, 472; Everhart v. Nesbitt, supra.

Defendant had the burden of proof of payment by Palliser of the tax on the lot described in the writ and the jury was so instructed: "It wouldn't matter who paid the taxes; if they were paid by anybody on the piece which is in question, that would protect that man from the further payment of taxes. So if the defendant satisfies you that Palliser paid the taxes on the two tracts, the one covering the particular plot in which is located or included the Gilbert lot—if these were paid, then the plaintiff's title amounts to nothing and you would find for the defendant." There was evidence from which the jury could find that there was double assessment and that Palliser paid the tax. The record evidence is that Palliser took title in 1911; his deed to defendant for the lot in suit was made and delivered in 1920, until which time the legal title to the lot was in Palliser; that is an element of more than ordinary importance in the case. The terms of the

agreement of sale, said to have been made in 1915, are not in the record, save that monthly payments are said to have been provided for; the general statement that Palliser "sold" in 1915 loses significance when considered with the undisputed record title in Palliser from 1911 to 1920. We have not the agreement to ascertain the expressed intention of the parties; it may or may not have been a conveyance of the lot. In Barnes v. Rea, 219 Pa. 279, 284, it is said: "Whether an instrument in writing transferring an interest in real estate shall be construed as an absolute conveyance, or only an agreement to convey, or an option to purchase depends, not on any particular words or phrases, but on the intention of the parties to be derived from the instrument itself by a consideration of all its parts, and when that is doubtful, from the circumstances attending it: Stouffer v. Coleman, 1 Yeates 393; Neave v. Jenkins, 2 Yeates 107; Bear v. Whisler, 7 Watts 144; Swank v. Fretts, 209 Pa. 625; Yerkes v. Richards, 153 Pa. 646; Verstine v Yeaney, 210 Pa. 109." There is no evidence that defendant went into possession under the agreement; or that he took possession prior to receiving the deed. The evidence is that he was in possession when the writ was served and a short time before when he petitioned for the rule.

The tax assessments of all the lands in the township assessed against Palliser for 1915, the year before the alleged agreement of sale, were put in evidence; the assessments against him for 1916, the year after the agreement to sell, were also put in and were the same as those of 1915. Palliser testified that he paid the taxes for 1916 before they could become delinquent, just as he had paid them for 1915, and this evidence was not contradicted. In addition, there was Palliser's evidence that he made sales in 1915 but that the assessments were continued against him and that

he complained to the county commissioners that he was the victim of double assessment but obtained no relief.

Appellant says that the assessment against Palliser is void because lots were improperly grouped; we need not speculate in this case about questions that might have arisen in possible disputes between Palliser and the county commissioners concerning the assessments; it is sufficient to say that the record between plaintiff and this defendant contains evidence to support a verdict that the lot·described in the writ was assessed to Palliser for 1916 taxes, and that he paid them; plaintiff therefor took no title to it by his purchase at the tax sale.

The letter signed by Schwartz was properly excluded; it was res inter alios acta, and was not part of the assessment. Appellant also complains, on the ground that it was not disputed, that the court left to the jury the identity of the land described in the writ with the lot purchased at the tax-sale; "...... there must be evidence to identify the tract assessed with that sold and described in the writ": Hess v. Herrington, 73 Pa. 438, 448. The record shows no formal admission of such identity, and, when the assessment was offered in evidence, appellee's counsel objected to its admission. It did not appear that defendant did not own other lots in the township assessed against him.

The judgment is affirmed.