## Auman v. Hough, Appellant.

*Tax sale—Evidence—Warrant—Assessment—Identification of unseated land.*

An assessment of 207 acres of unseated land in the name of "Thomas Carothers" will not sustain a tax sale of a part of 407 acres of land warranted in the name of "James Crowthers," where there is no evidence to indentify the 207 acres as a part of the 407 acres.

Argued March 6, 1906.  Appeal, No. 3, March T., 1906, by defendant, from judgment of C. P. Clinton Co., Jan. T., 1902, No. 106, for plaintiff on case tried by court without a jury, in suit of William Auman v. Nathan Hough et al. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.   Reversed.

Ejectment for 207 acres of unseated land in Logan Township.

The case was tried by MAYER, P. J., without a jury under the act of April 22, 1874.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for plaintiff.

*J. A. B. Miller* and *T. C. Hipple*, for. appellant.—The recitals in the patent offered in evidence by the plaintiff are conclusive against him, that the correct warrantee name of the tract in dispute is James Crowthers: Olewine v. Messmore, 128 Pa. 470.

The word James is as much the part of the name of a person or thing named James Crowthers, as is the name Crowthers,

under the acts of assembly: Hamaker v. Whitecar, 1 Walker (Pa.), 120; Philadelphia v. Miller, 49 Pa. 440; Philadelphia v. Lyman, 56 Pa. 488; Brotherline v. Hammond, 69 Pa. 128; Baines v. Alker, 207 Pa. 234.

If we regard the name Carothers as a family name, or as a species of class name, which we think admissible, then we may also classify the names Thomas and James as distinguishing names. The appellant therefore contends that the name Thomas Carothers does not tend to identify a tract of land properly named James Crowthers, but would tend to negative the idea that the James Crowthers tract was intended to be assessed, to mislead the owner, and to distinguish the tract as another or different tract than the James Crowthers warrant.

It will be found in every case decided by the courts of Pennsylvania, from Stewart v. Shoenfelt, 13 S. & R. 360, to Schreiber v. Moynihan, 197 Pa. 578, that if the assessment were sustained at all it was because of the presence in the assessment of the name either of the warrantee, or of present or former owner; or of a claimant under a title good or bad; or of a person connected at some time with the possession; or where the assessment contained an element of description in the nature of adjoiners or waters located thereon.

*G. K. Wright,* with him *S. D. Ball,* for appellee.—As the assignments of error refer to the findings of fact, the law is well settled that this court will not go behind the findings of facts found by the court below, under the reference law of April 22, 1874: Jamison et al. v. Collins, 83 Pa. 359; Griffith et al. v. Sitgreaves, 90 Pa. 161; Brown et al. v. Dempsey, 95 Pa. 243; Brown, Early & Co. v. Boom Co., 109 Pa. 57; Gonser v. Smith, 115 Pa. 452; Com. v. Manufacturing Co., 151 Pa. 265; Snyder v. Steinmetz, 6 Pa. Superior Ct. 341.

It has been ruled in several cases that the commissioners, in cases of irregularity, have authority to make the assessment under the curative provisions of the act of 1815: Devinney v. Reynolds, 1 W. & S. 328; Hubley v. Keyser, 2 P. & W. 496; Hess v. Herrington, 73 Pa. 438.

The name of the warrantee and the township are circumstances of description, but not conclusive, and if they do not accord with the actual facts, the identity of the land may be

established by any other competent evidence which is satisfactory to the jury: Miller v. Hale, 26 Pa. 432.

It especially worthy of note in the case before this court, that there is no evidence that James Crowthers, or anyone claiming under him, has ever appeared at the said county of Clinton, to return his land for assessment as the law contemplates, to pay the tax on his land, or call at the office to inquire as to these matters; hence he has no right to complain of precision in the same: Dunden v. Snodgrass, 18 Pa. 151; Franklin Coal Co. v. Bertels, 109 Pa. 550.

OPINION BY MORRISON, J., June 30, 1906:

This is an action of ejectment brought to recover possession of 207 acres of unseated land, said to be located in Logan township, Clinton county. The plaintiff claimed under a treasurers' sale of unseated lands, made January 26, 1893, for the nonpayment of taxes attempted to be assessed for the years 1890 and 1891. The treasurers' sale and the deed made in pursuance thereof are conceded to be regular, if there was a valid assessment of the land described in the writ of ejectment. It is also conceded that the title attempted to be made by said sale and deed was regularly conveyed to the plaintiff prior to the commencement of this suit.

The parties, by agreement filed, waived a jury trial and submitted the case to the court under the Act of April 22, 1874, P. L. 109, and the court having entered a final judgment in favor of the plaintiff for the land described in the writ, the defendants appealed to this court.

The integrity of the judgment rests upon the sufficiency of the assessment of the land described in the writ as unseated land, for the years 1890 and 1891. The learned court finds as a fact that : " 207 acres of unseated land in the warrantee name of 'Thomas Carothers' were assessed in Logan township, Clinton county, for the years 1890 and 1891 and valued at $207." The learned court also finds that " on September 10, 1794, a warrant was issued by the commonwealth to ' James Carothers ' for 400 acres of land adjoining land granted on the same day to William Hammer on the south. In pursuance of this warrant a survey was made December 2, 1794, and returned into the land office on September 28, 1795, as containing 407 acres and three

perches.    The survey as returned calls for the William Boyd, William Hammer and Andrew Moore tracts as adjoiners."

The court further finds, in substance, that although the whole of the land described in the warrant was formerly located in Centre county, by legal proceedings establishing the boundary lines between the counties of Centre and Clinton, 207 acres of the tract of unseated land in the name of "Thomas Carothers" were in the county of Clinton, and that this land was a part of the 407 acres, and the same land assessed and sold by the treasurer as above stated.

Exceptions were filed by the appellants to the findings of fact and conclusions of law, and among these exceptions is one attacking the validity of the proceedings of the commissioners appointed to run and mark the boundary lines between the counties of Centre and Clinton.    The view we take of this case does not require a decision upon the question of the validity of the work and report of said commissioners, and, for the purposes of the present decision, we will assume that the learned court is correct in finding that: "The commissioners ran and marked the boundary line between the two counties and made and filed the drafts required by the statute."

This brings us to the real question in the case, i. e., is the assessment sufficient upon which to rest a valid sale of unseated lands for the nonpayment of taxes?    It is conceded on all hands that the land intended to be assessed and sold by the county treasurer was a part of the 407 acres and three perches described in the warrant of September 10, 1794, and the survey of December 2, 1794.    Now, turning to that warrant and survey we find that it was in the name of "James Crowthers" and not "James Carothers," as found by the learned court in his findings of fact.    There is not in this record a scintilla of evidence upon which to rest the finding of fact that the warrant was in the name of "James Carothers."    In our opinion, the mistake of the learned judge in assuming that the name was "Carothers" led him to the erroneous conclusion that the assessment of the land in dispute for the years 1890 and 1891, in the name of "Thomas Carothers," was a valid assessment.    We have already seen that the learned court found that the land in question was assessed in the warrantee name of "Thomas Carothers," but there is no evidence in the record that any land was warranted

in the name of " Thomas Carothers " in Logan township, Clinton county, and, on the contrary, the undisputed evidence and the certificate from the land office are that there is no tract of unseated land in the county of Clinton warranted in the name of " Thomas Carothers." It is a conceded fact that the land to which the learned court attempts to attach the assessment in the name of " Thomas Carothers " is a part of the land warranted to " James Crowthers " on September 10, 1794.

A careful examination of the evidence convinces us that there is nothing in the assessment, upon which the tax title is based, which will lead to the identification of the land described in the writ. It is not identified in the assessment by the number of acres contained in the original warrant; it is not identified by the name of the warrantee, as the assessment is " Thomas Carothers," while the correct warrantee name is " James Crowthers "; there is no warrant number given in the assessment, no adjoiner, and there is nothing referred to in the assessment itself which will fill the requirements of the law as established by numerous cases. Note here that the assessment is neither in the Christian nor surname of the warrantee.

In Bachop v. Critchlow, 142 Pa. 518, the question of the validity of an assessment is considered, and on page 526 the Supreme Court, by Mr. Justice CLARK, said : " His treasurers' deeds were not shown to cover the premises in dispute; the name of S. Critchlow had in no way been connected with the title to the land, good or bad. There must be some element of identity in the assessment itself, leading to a knowledge of the land assessed,—a description of the land, or some circumstance, number, or adjoinder, associated or connected with it, or a name connected at some time with the title to the land, good or bad."

The doctrine so plainly laid down in the above case is not new, as we find, in substance, the same rule in Lyman v. City of Philadelphia, 56 Pa. 488. In that case AGNEW, J., on page 499, said : " Authorities were also multiplied to show that it had often been held that the land must be in somewise identified from something appearing in the assessment; and that the assessment of lands is a matter resting upon the written evidence of it found or once actually existing in the commissioners' office." In that case the assessment was : " Turnbull John, 401 acres, at 25, $100.25, tax, 30." The attempt was

made to sustain a tax sale of the James Trembel 400 acres of land on this assessment, but on an elaborate consideration, the Supreme Court held that the assessment and sale would not convey the James Trembel land.

In our opinion, there is no material difference in that case and the present one. If an assessment in the name of John Turnbull was not good as to the land of James Trembel, how can it be said that an assessment of 207 acres of land in the name of " Thomas Carothers " will sustain a tax sale of a part of 407 acres of land warranted in the name of "James Crowthers " ?

In Fisk v. Corey, 141 Pa. 334, we find the same doctrine plainly stated. The Supreme Court, by Mr. Justice CLARK (p. 347), said : " There is no evidence upon the face of the assessment sufficient to go to a jury upon the question of identification; . . . . Although the decisions were not formerly to this effect, it is now well settled that the land must be in some way identified, from something appearing in the assessment; and this rests the proof of identification solely upon what is found or once existed in the commissioners' office : Philadelphia v. Miller, 49 Pa. 440; Lyman v. Philadelphia, 56 Pa. 488. . . . Assessment is, from its legal requirement, and the necessity for preserving its evidence, a written entry, and must depend upon the records of the commissioners' office, and not upon parol testimony, or the private duplicate of the assessor."

The learned court below seems to have felt the necessity of helping out the assessment by parol and other evidence. One of his material findings of fact is that " it appears on their draft filed in the commissioners' office of Clinton county that 207 acres of a tract of unseated land in the name of ' Thomas Carothers ' were in the county of Clinton, and has for its adjoiners the William Boyd and William Hammer tracts." But this matter was in no way connected with the assessment, and it was entirely incompetent evidence for the purpose of attaching the " Thomas Carothers " assessment to the " James Crowthers" land. Again the learned court finds that : " The location of the James Carothers tract of land on the ground is well established by the testimony of the surveyors, and adjoins the William Boyd and William Hammer tracts for which it calls." But this finding of fact is wholly immaterial because there is

no land warranted in the name of "James Carothers," and there is nothing in the assessment itself which leads to the identification of the land described in the writ. Again the learned court finds : " There can be no doubt that the 207 acres of land assessed and sold in the name of 'Thomas Carothers' tract was the land covered by the 'James Carothers' warrant and survey, and we therefore find it as a fact that 207 acres of land assessed and sold by the treasurer of Clinton county to the county commissioners was the 'James Carothers' tract, although assessed and sold in the name of 'Thomas Carothers.'" But the learned court found these facts from evidence de hors the assessment, that is, mainly from the report of the commis-sioners fixing the boundary line between Centre and Clinton counties and proof of the adjoiners of the James Crowthers warrant. However, these facts were not referred to in the assessment and there was no evidence in the commissioners' office, a part of the assessment, which connected it with the " James Crowthers " land. In our opinion, the assessment of 207 acres of land in Logan township in the name of " Thomas Carothers," without more, is wholly insufficient to support a tax sale of any portion of the warrant granted in 1794 for 407 acres and three perches of land in the name of " James Crow-thers." We find no evidence in the record that any man named " Thomas Carothers " was ever in possession or claimed possession of the land in dispute, nor do we find that any man of that name ever claimed title, good or bad, to said land, and, there-fore, we think the assessment in that name is wholly void as to the " James Crowthers " land.

We think it of some consequence that the owners of the 407-acre tract believed it to be all in Centre county, and it was of-fered to be proved that this tract was all assessed in that county and the taxes regularly paid thereon. This fact re-lieves the owners from any culpability in seeking to escape the payment of taxes on the land.

We find in the record the testimony of H. A. Myers, assessor of Logan township, that he did not and would not assess any of the James Carothers land to " Thomas Carothers," because he supposed it was in Centre county, and he knew it as the " James Carothers " tract nearly all of his lifetime. Samuel Elgin, another assessor of Logan township for 1891, testified

that he did not intend to assess this land in the name of " Thomas Carothers "; that he was seventy-one years old and knew the land as the " James Carothers " tract. William Rishell also testified that he knew the land as the " James Carothers " tract. John Caris also testified that he knew it by the same name. It thus seems that the name " James Carothers " had become attached to this land by the people in that vicinity using the erroneous name " Carothers" instead of " Crowthers." It can be inferred from the evidence that some of the witnesses supposed that the " Thomas Carothers " and " James Carothers " tracts were not the same. This shows how misleading it would be to assess any part of the " James " tract in the name of " Thomas." And an assessment in the latter name, without more, would not point with sufficient certainty to the " James Crowthers " land.

In our opinion, the weight of the evidence indicated that the land was not generally known in the neighborhood of its location as the " Thomas Carothers " tract, but by some people as the " James Carothers." We therefore conclude that the learned court erred in finding as a fact that the land in question was ever so generally known by the name of " Carothers " as to justify assessing it in that name. But possibly the evidence would justify a finding that an assessment of the land in the name of " James Carothers " would be sufficient. But we cannot assent to the conclusion that an assessment of this land in the name of " Thomas Carothers " was sufficient to lead to its identification. It is fairly deducible from the evidence that " Thomas Carothers " was, as to the land in question, a myth.

The learned court below in support of his conclusions relied on Woodside v. Wilson, 32 Pa. 52; Strauch v. Shoemaker, 1 W. & S. 166; Glass v. Gilbert, 58 Pa. 266; Franklin Coal Co. v. Bertels, 109 Pa. 550, and McClements' Appeal, 2 Pa. Superior Ct. 443.

In Woodside v. Wilson the plaintiff recovered under a treasurers' deed for 100 acres of land, assessed as part of tract No. 1,302, in the name of .E. Rockwell, and sold for the taxes of 1850 and 1851; and gave evidence on the trial to show that the assessor intended to assess No. 152, a donation tract in Richmond township, included in the eighth district of donation

lands. It was conceded that the number given in the assessment was wrong, but the validity of the assessment, as stated by THOMPSON, J. (p. 57), turned on the point that " the land was known in the assessment-books, and in the neighborhood, by the name of Rockwell, the person in whose name it was assessed and sold, and who had been in fact an owner and taxpayer on it for ten years. This fact would necessarily give it a designation as his land, and Mr. Reynolds, or a purchaser from him, would most naturally expect to find it taxed in that name." In that opinion Judge THOMPSON refers to Dunn v. Ralyea, 6 W. & S. 475 : " That was the case of donation tract No. 1,031, assessed by No. 1,029, in the name of Jacob Herrington. The sale was held invalid, for both the number and the name were wrong. Jacob Herrington never had any interest nor property in 1,031 ; and if the owner, in looking after his land, had examined the assessments, he would not have found his number there ; and as Herrington was an entire stranger to it, never having been a claimant, agent, or otherwise interested in it, he could not possibly have discovered, in this deep disguise, his own land ; on the contrary, it was calculated to beguile him into the belief that his land was not assessed at all, or that someone had paid the tax." The above quotation is from the opinion of THOMPSON, J. (p. 56). That case holds in harmony with Woodside v. Wilson that if the assessment had been in the name of someone having or claiming an interest in the land, it might have been sufficient, although the number was wrong. We are unable to see how either of the above cases tends to sustain the assessment in the present case. In it there is no number given, no description or designation, except the name " Thomas Carothers " and the number of acres, and the acres embrace only a part of the original tract warranted to " James Crowthers." The learned court below sustained the assessment in the name of " Thomas Carothers," although he " was an entire stranger to it, never having been a claimant, agent, or otherwise interested in it."

In Strauch v. Shoemaker, the real question decided is stated in the syllabus thus : " When unseated land is sold for the payment of taxes, the title of the real owner, whatever it may be, passes to the purchaser, whether it be assessed and sold in his name, the name of the warrantee or a stranger, and whether

the person in whose name it is taxed and sold has or has not any title." That case cannot be tortured into a ruling that unseated land can be sold on an assessment which does not lead to an identification of the land intended to be charged. But if it does bear such a construction, it has been many times overruled by the decisions of the Supreme Court in subsequent cases, which clearly hold that the assessment must lead to identification of the land. Really what Strauch v. Shoemaker decides, in view of the more modern cases, is that unseated lands, sufficiently identified in the assessment, may be sold for the nonpayment of taxes and the whole title to the land passed notwithstanding the fact that it is not assessed in the name of the owner. In that case the dissenting opinion of HUSTON, J., is worthy of consideration in connection with the modern decisions.

In Glass v. Gilbert it is held as stated in the syllabus : " To pass title by tax sale, the assessment must contain some element either of circumstances or name which leads to identification of the land. Although there be no other element of description, if the name in which it is assessed has become linked to the land by some known claim of title or possession, it is a source of identification and will support the assessment." In that case AGNEW, J. (p. 290), said : " In this case Benjamin Combe's name became associated and connected with the land by his purchase of the Whitman claim, and this afforded a means of identifying the land assessed in his name as 800 acres in Rush township." Thus it clearly appears that the assessment was in the name of a person claiming to own the land or an interest therein.

Franklin Coal Co. v. Bertels, is authority for the proposition that : " A sale of unseated land for taxes passes the title to the purchaser although the land may not have been taxed and sold in the name of the real owner. In such a case, however, the land must be identified and distinguished in the assessment as the same land as that in controversy ; and in case of dispute the question of identification is for the jury." But that case must not be understood as holding that the question of identification can go to the jury, except on sufficient evidence. This is squarely ruled in McClements' Appeal, 2 Pa. Superior Ct. 443, where President Judge RICE (p. 459) said : " The

burden of proof was on the plaintiffs, and while the question of identity is one of fact, to be decided by the jury, a jury has no more right to infer the fact without proof than the court." In our opinion, McClements' Appeal is strong authority against the conclusion of the learned court below on the facts in the present case, and although it is cited by the court below, to our mind, its doctrine calls for a reversal of the judgment under consideration.

Franklin Coal Co. v. Bertels, is not very satisfactorily reported, but it does clearly appear that the land was assessed for many years in the name of Joseph Newbold, and that it was surveyed for the heirs of Joseph Newbold, and it further appears that the land in question was commonly known by the people who knew the tract, and by the taxing officers, as the Joseph Newbold tract. Upon this state of facts the court submitted the question of identification to the jury, and on appeal the Supreme Court said: "The questions of the identity of this tract being the one that was assessed and sold, as well as whether there was such a severance of a part of the tract by a distinct line of demarkation so as to leave the rest unseated, were well and carefully submitted to the jury." That case is authority for the proposition that the identity of the land is for the jury where there is sufficient evidence, and the Supreme Court agreed with the court below that the evidence was sufficient to carry the questions in dispute to the jury. We do not regard that case in conflict with Fisk v. Corey, 141 Pa. 334, and Bachop v. Critchlow, 142 Pa. 518, but if it can be regarded as in conflict with those cases, it must fall, because they are much later and much more thorough discussions of the questions involved than we find in Coal Co. v. Bertels.

Our conclusion is, upon a careful consideration of the evidence and authorities, that if the present case had been tried before a court and jury, there was not sufficient evidence to carry to the jury the question of the identification of the land assessed in the name of " Thomas Carothers " in Logan township, and that the assessment will not support a tax sale of the 207 acres of the warrant granted in 1794 for 407 acres and three perches of land in the name of " James Crowthers."

The learned judge erred in not directing judgment in favor of the defendants, and the judgment is now reversed and judg-

ment granted in favor of the defendants for the land described
in the writ.

RICE, P. J., dissenting:

It is to be noticed that this case was tried by the court with-
out a jury. It is needless. to say that the judge's findings
of fact, if there was any evidence to support them, are as con-
clusive upon appeal as a verdict of a jury. In order to reverse
this judgment we must overturn the judge's finding that the
207 acres of land assessed and sold in the name of Thomas
Carothers was the land covered by the James Carothers
warrant and survey. I am unable to concur in the conclusion
that this finding of fact is wholly unwarranted by evidence in
the case. In addition to the facts stated in the opinion of the
learned judge below, it is not out of place to call attention to
the evidence tending to show that the commissioners appointed
to run the county line designated this 207-acre tract as the
Thomas Carothers tract in the map which they filed, that there
is no tract in the warranty name Thomas Carothers, that it was
known in the community by the name Thomas Carothers, that
from 1878 to 1882 this tract was assessed in the name of
Thomas Carothers, and also from 1884 to 1899 it was so
assessed. Taking the evidence as a whole I do not think we
can say as matter of law that the assessment was not sufficient
to lead to identification. " In making out an actual assessment
of unseated land which has been sold for taxes, much liberality
has always been shown by the courts in receiving evidence. . . .
Until all the evidence bearing upon the question of assessment
is in, it would be unsafe for the court to pronounce its effect."
AGNEW, J., in Lyman v. Philadelphia, 56 Pa. 488. As illustra-
tion of the principle, land lying in one township may pass under
an assessment and sale for taxes describing it as lying in
another, provided there are other means of description sufficient
to identify the land, "of which, generally, the jury are the
judges:" Stewart v. Shoenfelt, 13 S. & R. 360; Miller v. Hale,
26 Pa. 432. In McClements v. Downey, 2 Pa. Superior Ct.
443, we said: "The authorities agree, if we understand them
correctly, that an assessment is not required to contain in
itself all the circumstances which are necessary and sufficient
to identify the land without resort to other evidence. It must

be 'a source of identification'; it must "lead to identifica-
tion.' For example, if the assessment be in the name of some
person who has been an occupant of the land, or of some
person who has claimed title to the land, those facts need not,
and ordinarily would not, appear on the face of the assessment,
but may be proved by evidence aliunde. Where the circum-
stances which are relied on to show the association of the
name given in the assessment with the land claimed, rest
in parol, as they must in many cases, the question of identifica-
tion must necessarily be submitted to the jury as a question of
fact: Franklin Coal Co. v. Bertels, 109 Pa. 550; Woodside v.
Wilson, 32 Pa. 52."

The foregoing suggestions indicate the reasons which impel
me to the conclusion that the judgment of the court below
should be affirmed.

ORLADY, J., joins in the dissent.