## Campbell v. Warden

*Conrad & Shannon* and *William L. Henry,* for plaintiff.

*Raymond E. Brown* and *Matthew A. Crawford,* for defendant.

WILSON, P. J., fiftieth judicial district, specially presiding, December 2, 1942.—

### *Procedural facts*

On petition filed by Mrs. Myra Warden at the above number and term on October 18, 1940, President Judge Jesse C. Long, of the Court of Common Pleas of Jefferson County, granted a rule on October 18, 1940, on F. L. Sutter, otherwise Fannie Larue Sutter Campbell, to appear within 20 days after service of the same and show cause why an issue should not be framed between her and Myra Warden, to settle and determine their respective rights and title in a certain lot of land located in the third ward of the Borough of Punxsutawney,

Jefferson County, Pa., fronting 100 feet on the east side of Ashland Avenue, and extending back a distance of 150 feet, maintaining an equal width. The case was thereafter proceeded with by John H. Wilson, president judge of the fiftieth judicial district of Pennsylvania, specially presiding.

Service of a duly certified copy of the petition was made on the respondent, Mrs. Campbell, on October 21, 1940. A responsive answer was filed by Mrs. Campbell, the respondent, November 8, 1940, in which answer paragraphs in the petition 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 22, 24, 25, 27, 39 and parts of 28 and 32 are admitted. Paragraphs 19, 21, 26, 31, 33, 34, 35, 38 are simply denied. Paragraphs 5, 14, 15, 16, 17, 18, 20, 29, 30, 37 are neither denied nor admitted but proof demanded. Paragraphs 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, and 52 are averments going to establish the legality of the assessment, levy, return, treasurer's sale to the commissioners, the confirmation thereof, and the sale by the commissioners to the respondent. A hearing on the petition and answer was held on December 27, 1940, at which hearing we specially presided.

The petitioner, Myra Warden, and her husband, as well as M. C. Sutter, county commissioner, and the respondent, Mrs. Campbell, and her husband, James Edward Campbell, were present. The respondent was not represented at this hearing by counsel and we explained to her that she had a right to be heard by herself or counsel together with an explanation of the nature of the proceedings. Respondent's husband stated, in substance, that his wife did not desire to offer any evidence, and that if she did not have title she was willing to make a deed back to the county.

The petitioner offered in evidence the averments in her petition which were admitted in respondent's answer, and by her own testimony established facts to make a prima facie case of possession and title in

petitioner, denied and disputed by respondent. We directed counsel for the petitioner to prepare an appropriate order, which he did, and on the same day we signed it, ordering that the rule be made absolute and the framing of an issue in ejectment, in which said F. L. Sutter, now Mrs. Campbell, shall be plaintiff, and Myra Warden shall be defendant, and ordered the plaintiff in such issue and action to bring ejectment within a period of 30 days.

Within the period of 30 days, Mrs. Campbell, the plaintiff, through William L. Henry and the law firm of Conrad & Shannon, her attorneys, complied with the said order by filing, on January 25, 1941, a præcipe, declaration and abstract of title in ejectment against Mrs. Warden. The summons in ejectment, declaration and abstract were duly served upon Myra Warden, the said defendant, who filed April 7, 1941, her plea, answer, or affidavit of defense and abstract of title. On February 3, 1941, the attorneys for Mrs. Campbell presented a motion to Judge Long to reopen the proceedings in which the order to bring an action in ejectment had been made, and to grant a further hearing, and thereafter amend, modify, or change the order of court of December 27, 1940, in accordance with the evidence. On this motion Judge Long granted a rule on Mrs. Warden, to which rule she filed an answer February 12, 1941.

On June 2, 1941, the attorneys for Mrs. Campbell presented a motion to Judge Long for leave to withdraw their appearance as counsel for Mrs. Campbell, on which Judge Long granted a rule, and referred both of those motions and the rule granted thereon to me for later disposition.

On July 15, 1941, we presided in the courts of Jefferson County for the purpose of hearing the issue in ejectment, and our attention being called to the rules granted by Judge Long on motions, first, to open the

proceedings of December 27, 1940, and grant a rehearing thereon and, second, to permit Mrs. Campbell's attorneys to withdraw their appearance, after hearing, we discharged both of the rules, but did not proceed with the trial of the issue owing to the absence of the plaintiff, Mrs. Campbell.

On August 25, 1941, it was agreed by the parties that the ejectment case be tried before the court without a jury.

On November 12, 1941, we again presided in the courts of Jefferson County for the purpose of trying the issue in ejectment without a jury, as agreed upon by counsel. At that time counsel for Mrs. Campbell presented motions to dismiss all proceedings for the reasons: first, that Mrs. Warden should have proceeded under the Act of March 8, 1889, P. L. 10, rather than proceed as she did under the Act of June 10, 1893, P. L. 415; and second, that the court, although Myra Warden in fact prayed for relief under the Act of 1893, in fact made an order granting relief under the Act of 1889 in ejectment, each of which motions we denied.

On November 24, 1941, we again presided in this court and evidence on the issue in ejectment was heard, counsel for plaintiff and defendant being present, and the testimony heard. We directed counsel to prepare and file requests for findings of fact and conclusions of law, which were duly filed by counsel for the plaintiff and the defendant. On June 5, 1942, we heard the argument of counsel on their requests for findings of fact and law. From all of the evidence introduced we find the following

*Facts*

1. Myra Warden, defendant, became the owner of the following described real estate situated in the Borough of Punxsutawney, Jefferson County, Pa., by virtue of a deed to her from John G. Ernst and Elizabeth

Ernst, his wife, dated December 3, 1912, and recorded in Deed Book 133, page 575, and a deed from B. B. Brumbaugh, guardian of Henry Ernst, dated December 3, 1912, and recorded in Deed Book 137, page 78, viz: Fronting 100 feet on the east side of Ashland Avenue and extending back a distance of 150 feet, maintaining the same width, in an easterly direction, and ending at an alley; containing approximately 15,000 square feet.

2. Said tract of land was never divided, plotted or surveyed into lots by the said Myra Warden or her predecessors in title or by any other person or persons and, from the time defendant acquired title thereto until the present, it has remained one tract of land of the dimensions of 100 feet on Ashland Avenue and extending back a distance of 150 feet to an alley, and said tract of land was never officially or otherwise designated or known as 104 and 106 Ashland Avenue.

3. The said Myra Warden, defendant, has remained in notorious, continuous and open possession of said tract of land since she became the owner thereof on December 3, 1912.

4. In the year 1932, the assessor of the third ward of said Borough of Punxsutawney assessed defendant's said real estate as seated land in her name as "2L, 104-106 Ashland," and valued the same as a single tract of land for the purposes of taxation at $400.

5. On April 27, 1933, George L. Condron, tax collector for said Borough of Punxsutawney, made a return for delinquent taxes of a lot of land assessed in the name of Myra Warden, designated "106 Ashland Avenue," valued at $200 and, at the same time made a like return of a lot, assessed in the same name, designated "104 Ashland Avenue," valued at $200, showing in each return that the delinquent tax due on each lot was $9.41.

6. In such returns, said tax collector described "106 Ashland Avenue" as "bounded on the East by an alley;

West by Ashland Avenue; North by A. B. Lowman; South by Mrs. Ada Grube"; and "104 Ashland Avenue" as "bounded on the East by an alley; on the West by Ashland Avenue; North by A. B. Lowman; South by Mrs. Ada Grube," which descriptions are identical and describe the whole tract of land assessed in the name of the said Myra Warden as "2L, 104-106 Ashland." The tax collector made two returns of the same tract of land.

7. The Commissioners of the County of Jefferson certified said tax collector's returns to the county treasurer, who was then Harvey G. Bowers.

8. Thereafter said Harvey G. Bowers, county treasurer, advertised said real estate for sale on August 6, 1934, as follows: "Warden, Myra Mrs. L. $20.49," and "Warden, Myra Mrs. L. $20.49".

9. The treasurer's sale advertised to be held on August 6, 1934, was adjourned in part to October 5, 1934.

10. Said adjourned treasurer's sales held on October 5, 1934, as aforesaid, were returned by him to the court of common pleas, at no. 153, October term, 1934. Such return shows that land described as "106 Ashland," situated in the third ward of the Borough of Punxsutawney, assessed in the name of Mrs. Myra Warden, was sold to the county. Said return was confirmed absolutely nunc pro tunc by said court.

11. Harvey G. Bowers was county treasurer at the time of said adjourned sales, having served as such from 1934 to the first Monday of January 1938.

12. The said Harvey G. Bowers, county treasurer, by whom said land was sold, did not make, acknowledge, and deliver a deed for the same to said county or the commissioners thereof.

13. On April 26, 1940, the commissioners of said county petitioned the court of common pleas thereof in proceedings at no. 541 of April term, 1940, for leave to sell at private sale to F. L. Sutter, for the

sum of $15, a lot of land situated in the third ward of said Borough of Punxsutawney, described as follows: "Bounded on the North by land of A. B. Lowman; on the East by an alley; on the South by land of Ada Grube, and on the West by Ashland Avenue. Being the premises assessed in name of Mrs. Myra Warden for the year 1932 as a lot." Such petition averred that the said F. L. Sutter had made a written offer for said real estate and that the same had been purchased by said county at treasurer's sale on October 5, 1934.

14. Upon presentation of such petition, said court fixed May 13, 1940, as the date for a hearing thereon and directed that notice of such hearing be given in the manner required by law.

15. The said real estate is situated in the Borough of Punxsutawney; said county commissioners gave notice of said hearing in the Brockway Record, published at Brockway, Pa.

16. On May 21, 1940, M. C. Sutter, together with G. O. Schuckers and Homer Reitz, commissioners of said county, executed a deed to the said F. L. Sutter for "all that certain piece, parcel or tract of land, situate in the Third Ward of the Borough of Punxsutawney, County of Jefferson and State of Pennsylvania, bounded and described as follows, to wit: Bounded on the North by land of A. B. Lowman; on the East by an alley; on the South by land of Mrs. Ada Grube; and on the West by Ashland Ave. Being the premises assessed in the name of Mrs. Myra Warden for the year 1932 as a Lot." Said deed was recorded on July 17, 1940, in Deed Book 215, page 261.

17. Under date of May 12, 1940, Glenn Shaffer, county treasurer, who did not hold such office when said real estate was sold by his predecessor in office, executed a deed to the Commissioners of Jefferson County for "a certain piece of Seated Land consisting of 1 Lot situated in Third Ward of the Borough of Punxsu-

tawney purporting to be owned and assessed in the name of Mrs. Myra Warden." Such deed was recorded on January 25, 1941.

18. Prior to the treasurer's sale held on October 5, 1934, defendant did not receive notice by registered mail "telling [her] that [her] property was going to be sold," but she learned of it through a newspaper.

19. Upon receiving such information, defendant went to the home of Harvey G. Bowers, who was then county treasurer, and asked him to delay selling her property until she could raise the taxes due, and he stated that he would comply with her request.

20. Being then advised by said county treasurer of the amount of taxes due from her defendant sent him by mail, addressed to him at Brookville, Pa., the sum of $20.06, and said county treasurer mailed to her a receipt in the following form: "Treasurer's office. Brookville, Pa., August 31, 1934. Received of Mrs. Myra Warden $20.06. Amount in full for taxes returned as per annexed statement on 2 Lots seated land Warrant No. — in Punxsutawney Boro. in the name of Mrs. Myra Warden," which receipt showed on its margin taxes levied and assessed for county and borough purposes and costs of advertising.

21. Defendant did not learn that her real estate had been sold at treasurer's sale until July 1940, which was after the county commissioners had sold the same to plaintiff. Upon the receipt of such information, defendant promptly consulted an attorney.

22. For the year 1936, the assessor for the third ward of said Borough of Punxsutawney assessed defendant with a lot of land designated as "104 Ashland," and thereafter the tax collector of said borough made return of the same, for delinquent 1936 taxes, describing the returned real estate as being bounded "on the East, Alley; West, Ashland Avenue; North, A. B. Lowman; South, Ida Grube," which is a description of the entire tract of land owned by defendant.

23. After such return of all of defendant's real estate, the county treasurer sold the same to the county on January 25, 1940, and made return of such sale to the court of common pleas.

24. On or about March 4, 1937, said county commissioners notified defendant by a partly printed and partly written postal card that her triennial assessment for the years 1937-1939, was "2 Lot $240," and that she had the privilege of appealing therefrom on designated dates. She did not attend an appeal or otherwise object to said assessment. Neither was she notified that said assessment had been changed.

25. On or about February 14, 1940, said county commissioners again notified defendant by a partly printed and partly written postal card that her triennial assessment for the years 1940-1942 was "2 Lot $240," and that she had the privilege of appealing therefrom on designated dates. She did not attend an appeal or otherwise object to said assessment. Neither was she notified that said assessment had been changed.

26. On October 14, 1939, defendant paid the tax collector for said Borough of Punxsutawney the sum of $5.32, and received from him a written receipt marked "1939 Lots in full".

27. For the year 1937, defendant was assessed as follows: "Warden, Mrs. Myra, 2 L—106-104 Ashland—value $240.00".

28. For the year 1938, defendant was assessed as follows: "Warden, Myra Mrs.—2L—104-106 Ashland —value $240.00".

29. For the year 1939, defendant was assessed as follows: "Warden, Myra Mrs.—2L—104-106 Ashland —Value $240."

### Discussion

Counsel for the plaintiff contends that the issue was improperly framed under the provisions of the Act of June 10, 1893, P. L. 415, 12 PS §1545.

Counsel in their brief say: "The remedy provided under the Act of 1893 is available only where possession and title are both disputed. Here there was no dispute regarding possession and therefore Myra Warden had no right to proceed under that act." This contention is answered by paragraph 31 of their client's answer to the petition of Mrs. Warden for an issue, which reads: "Respondent denies the claim of possession and right of title set forth in Paragraph 31 of the petition." And it further says in answer to paragraph 32 of the petition: "It is admitted that the right of title of the petitioner and her right of possession of said land is disputed and denied by respondent who claims title by virtue of the deed from the Commissioners of Jefferson County." The averments in paragraphs 31 and 32 of the petition warranted the court granting the rule to show cause in accord with the provisions of the first paragraph of section 2 of the Act of 1893. On hearing on the petition and answer, we having found the facts set forth in the petition to be true, it became our duty, under the second paragraph of section 2 of the Act of 1893, to frame an issue in accord with the letter of that second paragraph (supra) to wit:

"Of such forms as the court shall deem proper between the respective parties, to settle and determine the right and title of the respective parties to said land, and the verdict of the jury in such issue shall have the same force and effect upon the right and title and right of possession of the respective parties in and to said land as a verdict in ejectment upon an equitable title."

We deemed an issue in ejectment proper and suited to determine the many questions raised in the petition and answer, the pleadings and practice being closely defined by statute and rules of court, and after hearing found Myra Warden in actual possession of the land under a recorded deed of conveyance, and Mrs.

Campbell out of possession, and challenging the title and right of possession in Myra Warden, and made Mrs. Campbell plaintiff in the issue and Mrs. Warden defendant.

Counsel for Mrs. Campbell, in support of their contention, cite Pifer v. Berkey, 229 Pa. 394. We were familiar with that case at the time we framed the issue in this case, and were influenced by what Justice Elkin, who wrote the opinion, said (p. 398) :

"No formal issue was framed as the statute requires and the parties went to trial upon the general averments of the petition and answer which were treated as the pleadings in the case."

While the opinion did not approve of this practice, the verdict of the jury and judgment thereon was affirmed. He further stated: "Both sides should be required to file abstracts of title and the entire proceeding should conform as nearly as may be to an action of ejectment." What more formal issue could have been framed in this case other than an issue in ejectment?

Counsel also cites Hemphill v. Ralston et al., 278 Pa. 432. We were attorney for Ralston, appellant in that case. The averments and the prayer in the petition were strictly in conformity with the provisions of the Act of 1889. The Supreme Court reversed the decree of the lower court making the rule absolute and awarding an issue, saying (p. 434) :

"No conclusion was reached [by the court below] as to the person who actually held the tract in controversy . . . a preliminary finding in the affirmative is necessary to confer jurisdiction, regardless of the act on which the proceeding was based."

In the present case the petition was in conformity with the Act of 1893. We found that Mrs. Warden, petitioner, was in possession under a title, both of which were questioned and disputed by Mrs. Campbell and we were in duty bound to make the rule absolute, and award a proper issue. We concluded an issue in

ejectment to be proper and most suitable, and are yet of the same opinion.

We are also of the opinion that our order of December 27, 1940, awarding an issue was not an interlocutory order but was a final definite order on the petition and answer from which an appeal would lie and it is questionable whether or not the plaintiff, having complied with the order by filing a præcipe, declaration, and abstract in ejectment, can now question the validity of the order. We are not determining that question.

At the hearing on the issue awarded, when the plaintiff rested her case, counsel for the defendant, Mrs. Warden, moved the court to strike from the record all of the evidence introduced by the plaintiff relating to the assessment, levy of tax on the defendant's land, return, certification to treasurer, etc. (as more fully set out in the motion of record), for the reason that all of said evidence so introduced is not pleaded in the plaintiff's declaration or abstract. We refused this motion for the reason that we wanted all of the evidence in the record so that this long - drawn - out proceeding could be determined. Technically we erred in so doing, but this error worked no injury to the plaintiff or defendant.

Counsel for the plaintiff presented three requests for findings of fact, all of which, as stated, we refuse to find. The first reads: "Plaintiff by her evidence has established all facts necessary for a good and legal title to the land in question in her and the same has not been rebutted." Counsel for the plaintiff presented four requests for conclusions of law, all of which we refuse. The first request we have covered fully in this opinion; the second, third, and fourth are embodied in her first request for findings of fact above set out.

We have examined carefully Glass et al. v. Seger et al., 265 Pa. 391, and the Act of June 10, 1893, P. L. 415, and the several acts of assembly cited by the plaintiff in support of her contention that the evidence

introduced by her raises a presumption of legal title in her which has not been rebutted, and are constrained to conclude that none of the cases or acts of assembly cited is controlling in this case, but do conclude that the presumption relied upon by the plaintiff has been overcome not only by evidence introduced on the part of the defendant, but by evidence apparent on the face of the record introduced as part of the plaintiff's case in chief.

In order not unduly to prolong this opinion, we will cite our specific conclusions briefly and without comment, other than a citation of the authorities or cases which, we conclude, sustain the conclusion.

### Conclusions of law

I. The unauthorized action of the assessor in dividing the plaintiff's single lot or tract into two lots and designating them 104 and 106, without the owner's consent or knowledge, and placing a value or assessment on both lots of $400, constitutes an illegal assessment: Reading et al. v. Finney et al., 73 Pa. 467; Brown v. Hays, 66 Pa. 229; McCormick et al. v. Berkey et al., 238 Pa. 264.

II. The two returns of the defendant's land on April 27, 1933, by the tax collector for delinquent 1932 taxes designated as Ashland 104, value $200, and Ashland 106, value $200, and bounding each lot by the same adjoiners as defendant's one lot, constituted two returns of the same land, irregular and illegal.

III. Lot 106, under all the evidence in this case, cannot be definitely located, nor can lot 104 be definitely located. In the præcipe for summons in ejectment the land claimed by the plaintiff is described: "Lot at 106 Ashland Avenue, bounded on the North by land of A. B. Lowman; on the East by an alley; on the South by Lot 104 and West by Ashland Avenue, which is one of two lots which is contained in the description set forth in the Order of Court of December

27, 1940, as fronting one hundred feet on the East side of Ashland Avenue and extending back one hundred fifty feet maintaining the same width and ending at an alley, containing approximately 15,000 square feet." Such description does not render it susceptible of identification or of location on the ground: Woodside et al. v. Wilson, 32 Pa. 52; and in McGuire v. Gilbert, 102 Pa. Superior Ct. 25, the Superior Court, quoting Hess v. Herrington, 73 Pa. 438, says: " '. . . there must be evidence to identify the tract assessed with that sold and described in the writ.' "

IV. The Commissioners of Jefferson County acquired no title to land purchased by them or awarded to them at the treasurer's sale of defendant's land held October 5, 1934, for the 1932 unpaid tax under which the plaintiff claims title and right of possession, until the county treasurer executed and acknowledged in the court of common pleas and delivered a deed for the said premises: Act of May 29, 1931, P. L. 280; Act of March 24, 1933, P. L. 18.

V. The plaintiff claims title and right of possession of defendant's land by virtue of a sale of defendant's land by the county treasurer, Harvey G. Bowers, on October 5, 1934, to the commissioners, her grantors, evidenced by a deed from Glenn Shaffer, then county treasurer, dated May 12, 1940, and it being in evidence that the commissioners of the county had placed the land of the defendant on the tax rolls for 1936, 1937, 1938, and 1939 and caused tax thereon to be levied, and paid by the defendant, this was an abandonment of any inchoate right of title they may have acquired as a result of the treasurer's sale held October 5, 1934, and the deed of Glenn Shaffer, treasurer of the county, executed, acknowledged, and delivered May 12, 1940, to the county commissioners purporting to convey land sold by his predecessor in office pursuant to a treasurer's sale held October 5, 1934, by reason of said replacement on the tax rolls, conveyed no title to the

county commissioners and for that reason is null and void.

VI. The defendant having demanded of the county treasurer the amount of her unpaid tax on her land, and the amount demanded by the treasurer having been paid to him before October 5, 1934, the sale by the treasurer to the county commissioners on that date passed or conveyed no title to or right of possession of her land or any part of her land to the county commissioners, even though the treasurer was mistaken as to the amount: Africa et al. v. Trexler, 232 Pa. 493; Pottsville Lumber Co. v. Wells, 157 Pa. 5; Breisch et al. v. Coxe et al., 81 Pa. 336.

VII. For the reasons hereinbefore set out and under all the evidence in the case, plaintiff has not established title in her to the land described in the praecipe and writ, and any presumption of title in plaintiff that may have arisen prima facie, is fully rebutted by all the evidence, and the verdict of the court is in favor of defendant.

## Order

The prothonotary is requested and directed to file this opinion, including our findings of fact, discussion, conclusions of law, and notice under the provisions of the second section of the Act of April 22, 1874, P. L. 109, 12 PS §689, that unless exceptions are filed within 30 days from the date of service of notice of filing judgment will be entered thereon, and serve a copy of our said opinion and notice forthwith on counsel for the plaintiff and defendant.

If no exceptions be filed within the time limited by the act, the prothonotary is authorized to enter judgment for the defendant in accordance with our seventh conclusion of law.